STATE of Missouri, Respondent,

v.

William SCHWER, Appellant.

No. 53300.

Missouri Court of Appeals, Eastern District, Division Four.

July 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 24, 1988.

Application to Transfer Denied Oct. 18, 1988.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Tim Wynes, Columbia, for appellant.

SIMON, Presiding Judge.

Appellant, William Schwer, was convicted by a jury of two counts of sale of a controlled substance, § 195.020(4), RSMo (1986) (hereinafter all further references shall be to RSMo (1986) unless otherwise noted). The trial court found appellant to be a prior and persistent offender and sentenced him to two concurrent terms of thirty years in prison.

On appeal, appellant contends the trial court erred: (1) in denying appellant's challenge for cause to a venireperson who was a crime victim and indicated that he would not be able to presume appellant innocent until proven guilty and therefore was unable to be a fair and impartial juror; (2) in overruling appellant's objections to the prosecutor's closing argument which referred to facts not in evidence and aroused in the jurors' personal hostility toward or fear of the appellant and resulted in denial of appellant's right to a fair and impartial jury and a fair trial; (3) in affixing punishment on each of the two counts at thirty years to run concurrently because such punishment is cruel and unusual as it is disproportionate to the offenses committed. We affirm.

Appellant does not challenge the sufficiency of the evidence, so a brief recital of the facts will suffice. At approximately 6:30 p.m. on February 18, 1986, Jeffrey Fishman, a St. Charles County Deputy Sheriff working undercover, met appellant in the parking lot of a child care center next to appellant's house. Deputy Fishman testified that appellant sold him four grams of cocaine. Also Deputy Fishman testified that on February 21, 1986, at approximately 3:00 p.m., he purchased four grams of cocaine from appellant at appellant's house. Later, laboratory tests disclosed that the packets which appellant sold Deputy Fishman each contained only two grams of cocaine.

In his testimony, appellant denied being at home and selling cocaine to Deputy Fishman on either occasion.

In his first point, appellant contends that the trial court erred in denying appellant's challenge for cause to venireperson Gatchalian. Appellant argues that venireperson Gatchalian could not be a fair and impartial juror because he indicated that he was a victim of a crime that may have involved drugs and that he would have a hard time presuming the defendant innocent until proven guilty.

At the beginning of voir dire, the trial court explained the presumption of innocence and the duty of the jury to find the defendant guilty beyond a reasonable doubt. The trial court then asked the venirepersons whether any of them would not be able to follow the instructions. In response, one venireperson was struck for cause because of her stated inability to convict anyone as she had brothers and sisters in trouble at both the state and federal level. After several other venirepersons responded to the court's query, the court stated the following:

But my question was: The Court read to you the one instruction on presumption of innocence; that all of us are presumed innocent until proven guilty beyond a reasonable doubt and the Court

was—the question to you was: Is there any of you that could not follow that instruction? Are there any other hands? Yes, sir?

Venireperson Gatchalian responded as follows:

VENIREPERSON GATCHALIAN: Your Honor, I was a victim of crime myself, and I don't know whether or not I'm—a crime was committed and the crime I'm implying is a burglary, and during the investigation one of the officers investigating hinted that it was committed by kids probably looking for money for drugs.

THE COURT: Would you give your name please?

VENIREPERSON GATCHALIAN: Gatchalian.

THE COURT: Okay. Again, I understand your feelings and those are matters that the attorneys will want to talk to you about to determine whether or not they want to keep you on this panel. But at this time I'm not going to excuse you. I will let them discuss that during the appropriate phase.

At the beginning of the state's voir dire, the prosecutor again explained the presumption of innocence and asked the venire panel generally if any of them would have difficulty with that principle. No one responded. At the close of the state's questioning, the prosecutor asked the venire panel whether anyone for any reason felt that he or she could not be fair and impartial in considering the case. Again, no one from the venire panel responded.

When the appellant began voir dire, the defense counsel questioned the venire panel about the presumption of innocence and also received no response. Later, the defense counsel questioned the venirepersons who were victims of crime and the following occurred:

[DEFENSE COUNSEL]: Oh, okay. Mister?

VENIREMAN GATCHALIAN: Gatchalian.

[DEFENSE COUNSEL]: Gatchalian, I'm sorry. You raised your hand earlier at—at a time when the Judge asked a question about—one of his initial questions, and you indicated that you had been the victim of a crime?

VENIREMAN GATCHALIAN: Yes.

[DEFENSE COUNSEL]: When was that?

VENIREMAN GATCHALIAN: On two occasions. Last year about September in Hawaii, somebody burglarized—I mean forced open the door to a car that we rented and took somebody's books and in January 25th of this year, my house was burglarized.

[DEFENSE COUNSEL]: Now, do I understand that this—did I understand that you were doing some investigation, or you—

VENIREMAN GATCHALIAN: —No, no, no. It's the—whatever I said was to a investigation of a cop who was in charge of—

[DEFENSE COUNSEL]: —Okay. Okay. Do you feel like—do I understand you right, sir, and I don't mean to put words in your mouth, but—or, again, as I said, you know, criticize or single out. Do I understand that this causes you some hesitation in whether or not you could be fair and impartial as a juror?

VENIREMAN GATCHALIAN: *Not really.* This is the first time I've been called for jury duty and when the Judge posed this question, I thought at the time it's something that I have to think about, and from what the defense attorney has instructed us, *I do believe that, like facts that he is innocent until proven guilty and we're supposed to follow the instructions.*

[DEFENSE COUNSEL]: Okay. So in other words you could set aside whatever your personal experiences were and—and take and listen to this case on its facts[,] is what we're trying to get at, of course?

VENIREMAN GATCHALIAN: *Well, I would equivocally say that it will be hard, but I will try.*

[DEFENSE COUNSEL]: Okay. That's—that's all we can ask. Okay. Thank you very much. Have you—have there been any—are you or any members

of your family or close friends in law enforcement?

VENIREMAN GATCHALIAN: No.

[DEFENSE COUNSEL]: Okay. Mr. Taylor?

(emphasis ours).

As indicated by the exchange, the trial court did not independently examine venireperson Gatchalian. Appellant sought to challenge venireperson Gatchalian for cause based on his responses about trying to be fair and impartial. The trial court denied appellant's challenge and did not state grounds for the denial. However, appellant, exercising one of his peremptory challenges, struck venireperson Gatchalian from the panel.

■ The principles governing jury selection are clear. A defendant in a criminal case is entitled to a qualified panel of venirepersons before he is required to make his peremptory challenges. *State v. Morrison,* 557 S.W.2d 445, 446[1] (Mo. banc 1977). For a trial court to refuse to sustain a valid challenge for cause constitutes an abuse of discretion and reversible error. *State v. Engleman,* 634 S.W.2d 466, 471[2–4] (Mo. 1982).

■ However, the trial court is accorded wide discretion in ruling on challenges for cause, but also has a duty to evaluate closely, and often independently examine, the qualifications of a potential juror. *State v. Draper,* 675 S.W.2d 863, 865[1–4] (Mo. banc 1984). Without such independent examination, a more searching review by the appellate court is justified. *State v. Ealy,* 624 S.W.2d 490, 493[10–12] (Mo.App. 1981). The trial court's determination will be rejected only on a clear showing of abuse of discretion. *State v. Olinghouse,* 605 S.W.2d 58, 69[14] (Mo. banc 1980).

■ A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; each case must be judged on its particular facts. *State v. Smith,* 649 S.W.2d 417, 422[2–7] (Mo. banc 1983). There will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion. *Id.* Appellate review of the trial

court's action is undertaken with the recognition that a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. *Id.* Because the trial court is in a better position to make that determination than the appellate court, doubt as to the trial court's findings will be resolved in its favor. *State v. Engleman,* 634 S.W.2d at 472[5–6]. Although errors in the exclusion of potential jurors should always be on the side of caution, reversal is required only if the defendant has been prejudiced. *State v. Draper,* 675 S.W.2d at 865[5].

■ Here, although it could be inferred that venireperson Gatchalian initially expressed some reservation about his impartiality and his ability to presume the defendant innocent until proven guilty, a review of the entire voir dire examination reveals that he demonstrated an ability to be fair and impartial. Upon examination by the defense counsel, venireperson Gatchalian stated that he did believe that defendant was innocent until proven guilty and that the jury is to follow the court's instruction. *See State v. Johnson,* 722 S.W.2d 62, 65[1,2] (Mo. banc 1986).

Appellant points to venireperson Gatchalian's final equivocal response to defense counsel's question as evidence of his inability to be a fair and impartial juror. Defense counsel asked whether venireperson Gatchalian could set aside his personal experiences and listen to the case on its facts. Venireperson Gatchalian responded that "it will be hard, but I will try."

Admissions of this kind do not necessarily render a venireperson unqualified to be a juror. *State v. Johns,* 679 S.W.2d 253, 263[19,20] (Mo. banc 1984). "The question of whether or not the experience could be 'put out of his mind' is not determinative of the qualifications of the venireman. The question properly is whether or not that experience would produce bias or prejudice

against the defendant on trial." *State v. Olinghouse,* 605 S.W.2d at 70[15].

We cannot say the trial court abused its discretion when it failed to excuse venireperson Gatchalian. Before the final exchange with defense counsel that appellant refers to, venireperson Gatchalian clearly indicated that he would follow the court's instructions. Furthermore, venireperson Gatchalian also stated that the crime committed against him really did not cause him any hesitation about his ability to be a fair and impartial juror.

Finally, we note that prospective jurors rarely speak in absolutes when responding to questions on voir dire. *State v. Campbell,* 739 S.W.2d 550, 552 (Mo.App.1987). Therefore, venireperson Gatchalian's responses to questions were sufficient to allow the trial judge to find that he had the ability to be a fair and impartial juror. The trial court did not abuse its discretion.

In his second point, appellant claims the trial court erred in failing to sustain objections to several remarks made by the prosecutor during closing argument. Appellant argues that the prosecutor referred to facts not in evidence and attempted to arouse in the jurors intense personal fear of, and hostility toward, the appellant, which resulted in a denial of his right to a fair and impartial jury and a fair trial.

Appellant first objects to the following statements made by the prosecutor which referred to St. Charles County undercover drug operations:

The State, too, is asking for justice. We're asking for justice not only for the Defendant; I'm not sure he wants justice. He wants sympathy, but I'm not sure he wants justice, because justice means he's guilty. He sold it, he's guilty. We're asking justice for the people of the State of Missouri and, particularly, the County of St. Charles. They have these undercover drug operations periodically because the Sheriff's Department and the city police and the other police departments are making a concerted effort—

[DEFENSE COUNSEL]: Objection, your Honor, there's no such evidence, that's improper argument.

THE COURT: Sustained.

[PROSECUTOR]: —making a concerted effort to stamp out—

[DEFENSE COUNSEL]: —Judge, objection. There's no such evidence, it's improper argument.

[PROSECUTOR]: It's an inference from the evidence, your Honor, that's why they have the undercover operations, is to try to stop drug trafficking.

THE COURT: All right. You may proceed, overruled.

[PROSECUTOR]: Thank you. Trying to stop drug trafficking ...

Appellant asserts that these comments suggest that appellant's arrest was the result of a concerted drug enforcement effort to stop drug trafficking by using undercover agents and that these facts were not in evidence and therefore could not be properly argued.

Initially, we note that broad discretion rests with the trial court in controlling closing argument, with wide latitude accorded counsel in their summation. *State v. Hubbard,* 659 S.W.2d 551, 558[20,21] (Mo.App.1983). Its ruling will be reversed only for abuse of discretion where the argument is plainly unwarranted. *State v. Armbruster,* 641 S.W.2d 763, 766[4–6] (Mo. 1982).

We recognize that a prosecutor may not express an opinion implying awareness of facts not available to the jury. *State v. Moore,* 428 S.W.2d 563, 565[4–6] (Mo.1968). However, balanced against this rule is the proposition that the prosecutor may state his conclusion if it is fairly drawn from the evidence. *State v. Jackson,* 499 S.W.2d 467, 471[2–4] (Mo. 1973). A prosecutor has the right to draw any inference from the evidence which he believes in good faith to be justified. *State v. Brewer,* 565 S.W.2d 801, 803[4,5] (Mo. App.1978).

On review, it is apparent that the inferences argued were reasonably drawn from the evidence. As the prosecutor

made clear in response to the defense counsel's second objection, it could be inferred from the evidence that undercover operations by the Sheriff's Department are an attempt to stop drug trafficking. Additionally, it could be inferred that the Sheriff's Department was making a concerted effort to stop drug trafficking. There was evidence that appellant sold cocaine. Certainly, cocaine is a drug under the law; thus law enforcement officials would be attempting to enforce the law. We cannot say that appellant was prejudiced by these comments.

The second group of comments challenged by appellant include the following:

[PROSECUTOR] ... they can do their job; we can do our job, but it means nothing unless you do your job, too. Unless you have the courage, based on the evidence that you've heard in this case today, to convict this man. Tell him the people—the citizens of St. Charles County are not going to tolerate the sale of cocaine in the County of St. Charles.

[DEFENSE COUNSEL]: Objection, improper argument and ask that it be stricken.

THE COURT: Overruled.

[PROSECUTOR]: There's nothing improper about wanting to stop the sale of cocaine for you and for the other citizens. This is what we need to do and that's what I'm asking you, based on the evidence you heard here today, convict this man. It may not be a big blow, but it's going to be a blow to them; it's going to send a message, maybe not a big message or a loud message, but it's going to send a message to the drug dealers here that the people—the citizens of St. Charles County are simply not going to tolerate the sale of drugs. Thank you very much.

Appellant alleges that these comments were designed to arouse in the jurors an intense personal hostility toward the appellant and, as such, were improper.

■ A prosecutor has the duty to insure a fair trial for each defendant. Therefore, his argument must not seek by inflammatory appeals to arouse in the ju-

rors personal hostility toward, or personal fear, of the defendant. *State v. Hubbard*, 659 S.W.2d at 558[22–27]. However, we have long recognized that arguments on the deterrence of crime and the necessity of law enforcement need not have support in evidence. *State v. McDonald*, 661 S.W.2d 497 at 506[18–20] (Mo.1983). Prosecutors are permitted to argue such propositions as the prevalence of crime in the community, the personal safety of its inhabitants, and the jury's duty to uphold the law as well as inferences from its failure to convict; and, such pleas may call upon common experience. *State v. Rodriguez*, 484 S.W.2d 203, 207[2] (Mo.1972).

■ Examining the prosecutor's comments, we cannot say that he exceeded the bounds of permissible argument. The thrust of the comments was a plea for stricter law enforcement as a deterrent to crime. The prosecutor was making a legitimate appeal to the jury to uphold the law and to do its duty. *State v. Pruitt*, 479 S.W.2d 785[9–11] (Mo. banc 1972). Thus, we find no abuse of discretion by the trial court in overruling appellant's objections to the prosecutor's comments. Point denied.

In his third and final point, appellant asks us to review the imposition of concurrent thirty year sentences as cruel and unusual punishment.

■ Section 195.200.4 provides that the punishment for the offense of selling cocaine, a Schedule II controlled substance, § 195.017.4(1)(d), shall be imprisonment for a term of not less than five years and no more than life imprisonment. It has been consistently held that a punishment within statutory limits established by the lawful representatives of the people is not cruel and unusual. *State v. Koonce*, 731 S.W.2d 431, 443[17, 18] (Mo.App.1987). The power to declare what shall constitute a crime and what should be the punishment is therefore vested in the legislature. *Id.* Courts have also held that punishment within the statutory limits is not cruel and unusual unless it is so disproportionate as to shock the moral sense of all reasonable men as to what is right and proper. *State v. Free-*

*man,* 702 S.W.2d 869, 875[9, 10] (Mo.App. 1985).

Appellant urges us to employ the comparative proportionality analysis enunciated by the Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Solem* has been construed to require a comparative proportionality analysis only when the length of a sentence of a defendant is grossly disproportionate to the gravity of the offense. *State v. Carlton,* 733 S.W.2d 23, 28[4,5] (Mo.App.1987).

Here, appellant was found to be a prior and persistent offender in that he pleaded guilty to second degree burglary and received probation and later pleaded guilty to second degree burglary which resulted in probation revocation and a concurrent three year sentence. Therefore, we conclude that appellant's sentence is not grossly disportionate to the gravity of the offense.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.