**STATE of Missouri, Respondent,**

v.

**Jerome HARRIS, Appellant.**

**Jerome HARRIS, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 57349, 58824.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 25, 1992.

Emily Blood, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant, Jerome Harris, of murder, second degree, § 565.021 RSMo 1986 [1], and armed criminal action, § 571.015. The court sentenced him as a prior and persistent offender to a total of fifty years imprisonment.

Defendant appeals from his convictions and sentences and from the denial of his Rule 29.15 motion. We affirm.

Defendant makes two threshold, interrelated arguments. He argues that the state failed to make a submissible case on murder, second degree, and, if a submissible case were made on that charge, he argues, the trial court improperly refused to instruct on the lesser included offense of involuntary manslaughter. Neither argument has merit.

■ To determine whether the state made a submissible case, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences and determine whether the evidence, so viewed, is sufficient for twelve reasonable people to find the defendant guilty beyond a reasonable doubt. *State v. Sanders*, 741 S.W.2d 739, 741 (Mo.App.1987).

Late one night in October, 1988, the victim, McArthur Carter (Carter), and Jerome McCoy (McCoy) were drinking liquor at the home of McCoy's mother. Around midnight, Carter and McCoy were driven by McCoy's brother to a liquor store. After leaving the store, Carter and McCoy walked down the street. Defendant called out to Carter from a house on the street. Defendant came out of the house to speak with Carter. After a short time, their discussion became an argument. The argument ended. McCoy and Carter walked down the street to a house in which Carter

---

1. All statutory citations are to RSMo 1986, unless otherwise cited.

was residing. Defendant walked away in the opposite direction.

For clarity, we set out a picture of the front of Carter's residence.

As can be seen, the residence is a single family, one story house. It is on the north side of the street. There is a porch on its east side. The entry from the porch into the house has a storm door and a wooden door. The storm door has horizontal bamboo slats instead of glass.

Immediately east of the entry, there is a window which faces onto the porch. This window was covered with a curtain at the time of the incident. A foyer or vestibule is immediately behind the entry door, and, to the left, or west, of the foyer, there is a front room which has two windows facing south.

Carter and McCoy entered the house and "locked" the wooden front door by jamming a "two by four" against it at an angle. Carter lighted a kerosene heater in the foyer to heat some food. The house had no electricity. Shortly thereafter, while Carter and McCoy were seated in the foyer someone knocked at the front door.

Carter requested the person to identify himself. He received the answer: "Jerome". Carter told "Jerome" to leave. "[H]e didn't feel like talking to him." But, "Jerome" simply knocked harder on the door. Then, Carter stood up "and started hollering toward the door", telling "Jerome" to get away from the door.

At this time, McCoy went into the front room, looked out of one of the windows and saw defendant on the porch. McCoy came back into the foyer and warned Carter not to open the door because defendant appeared to have something "like a stick" next to his leg. Defendant continued to knock on the door and began hollering. Then, McCoy heard "three pops come through the door.... [There were] like splinters of wood coming through the door." These were bullets fired through the door near the door knob. Both McCoy and Carter dropped to the floor.

About a minute later, Carter raised his head. McCoy "heard two more pops" which came from the "window on the [east] side of the door," facing onto the porch. These were bullets fired through the lower left hand corner of the window, as you face it. McCoy saw Carter fall, crawled over to him, noticed "blood coming out of his head", checked Carter's pulse and found none. McCoy then ran out the back door of the house, reached a phone, phoned his mother and told her what had happened and to call the police.

Within hours of the shooting, defendant was apprehended, three or four houses from Carter's residence. There, McCoy identified defendant as the man on the porch at Carter's residence. Subsequently, McCoy identified defendant in a line-up. Later that morning, the police found a nine millimeter semi-automatic rifle at the house of defendant's mother. At trial, this rifle was identified by a ballistics expert as the gun used to kill Carter.

■ Defendant focuses his argument against submissibility on the State's proof of his culpable mental state. "A person commits the crime of murder in the second degree if he ... [k]nowingly causes the death of another person... ." § 565.-021(1). A person "knowingly" causes the death of another if "he is aware that his conduct is practically certain" to cause death. § 562.016.3(2) Defendant argues there was no direct evidence that he "could see what he was shooting at, nor that he knew he was shooting at Carter" and, therefore, no inference could be drawn that he was "practically certain" his shooting would cause Carter's death.

Defendant omits the most probative evidence. Direct evidence of a particular culpable mental state is rarely available. Circumstantial evidence and permissible inferences usually provide the necessary proof. *E.g. State v. Reynolds,* 782 S.W.2d 793, 797 (Mo.App.1989). Here, defendant knocked on the door to Carter's house and engaged in a "hollering" match with him. It is reasonable to assume defendant knew Carter was standing in the foyer just behind the door when this verbal exchange took place. Immediately after the exchange, defendant fired three shots in a close pattern into the door of the house, at door-knob level, with a nine millimeter, semi-automatic rifle. About a minute later, defendant shot twice more through the window located directly to the right of the door, again in a close pattern, in the lower left-hand corner of the window. The foyer was illuminated by the light of the kerosene heater. But, even if the curtain over this window kept defendant from seeing Carter, defendant still must have known Carter was in the foyer just behind the door.

■ Our Criminal Code, which tracks the Model Penal Code, does not require proof that a defendant infallibly know that a certain result will follow in order to show the defendant acted "knowingly". There is a contingency factor built into the definition. The state need show only that the defendant must have known the result was "practically certain" to follow from his conduct. § 562.016.3(2); *see, Model Penal Code and Commentaries* § 2.02, at 236, fn. 13 (1985). The circumstantial evidence here is sufficient to show defendant knew that his firing five shots through the door and window into the foyer was practically certain to cause the death of Carter, who, defendant must have known, was standing on the other side of the door in that foyer area. *See, State v. Newbold,* 731 S.W.2d 373, 381–382 (Mo.App.1987); *State v. Green,* 778 S.W.2d 326, 327 (Mo.App.1989).

■ Defendant also contends the trial court improperly rejected his proffered instruction on the lesser included offense of involuntary manslaughter. We disagree.

A person commits the crime of involuntary manslaughter if he "recklessly" causes the death of another. § 565.024.-1(1). A person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. Thus, recklessness as used in our Criminal Code and the Model Penal Code "involves conscious risk creation. It resembles knowingly in that a state of awareness is involved, but the awareness is

of risk, that is of a probability less than a substantial certainty...." *Model Penal Code, supra,* § 202 at 236.

Involuntary manslaughter caused by recklessness is a lesser included offense of murder, second degree. § 565.025.2(2)(b). Defendant contends there was no proof that he could see Carter when he fired the shots at him; therefore, proof of his shooting simply showed he acted "recklessly"—his conscious disregard of a substantial and unjustifiable risk that Carter's death would result—rather than showing he acted "knowingly"—his awareness that Carter's death was "practically certain" to result; and, since involuntary manslaughter is a lesser included offense of murder, second degree, the trial court was required to submit defendant's requested instruction on involuntary manslaughter. This argument is misdirected and, thus, misses the mark.

■ A trial court is not obligated to instruct on a lesser included offense unless the evidence establishes a basis for acquittal of the greater offense and conviction of the lesser included offense. § 556.046.2; *See State v. Stepter,* 794 S.W.2d 649, 652 (Mo. banc 1990). The question is whether the evidence, in fact or by inference, provides a *basis* for *both* an acquittal of the greater offense and a conviction of the lesser offense. *Id.* To determine the evidentiary basis for acquittal, a defendant cannot eliminate undisputed facts. There must be an evidentiary basis logically permitting an operative fact to be disregarded. *See, e.g. State v. Olson,* 636 S.W.2d 318, 321 (Mo. banc 1982); *State v. Achter,* 448 S.W.2d 898, 900 (Mo.1970); *but, see, State v. Murray,* 744 S.W.2d 762, 777–778 (Mo. banc) (Blackmar, J., concurring in result), *cert. denied* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

Here, the undisputed facts, if believed, compel the inference that defendant must have been aware that his shots were practically certain to cause the death of Carter, regardless of whether he could actually see Carter. During defendant's continuing argument with Carter while defendant was on the porch, defendant must have known Carter was right behind the door. Know-

ing that, defendant did not shoot indiscriminately. He fired three rounds in a close cluster at door-knob height through the door in the direction of Carter's voice, and, then, to assure the certainty of death, defendant fired two more rounds through the lower left hand corner of the window immediately adjacent to the door. A rational juror could not acquit defendant of murder, second degree on these facts, and, thus, the court was not required to instruct on the lesser included offense of involuntary manslaughter.

■ Defendant also attacks the trial court's denial of his motion to suppress McCoy's testimony about the out-of-court identification of defendant made by McCoy at the home of defendant's mother. This identification, defendant contends, was the result of an unlawful arrest and, therefore, should have been prohibited under the "poison fruit" doctrine. The arrest was unlawful, defendant contends, because the police entered the home without a warrant or the consent of the owner and with no exigent circumstances to justify the entry.

Defendant failed to object to this testimony during trial and, therefore, failed to preserve this issue for review. *State v. Walker,* 743 S.W.2d 99, 103 (Mo.App.1988). Moreover, even if the arrest here were illegal, McCoy's subsequent identification of defendant would not be inadmissible.

■ Identification of a defendant which has reliability independent of an illegal arrest is admissible. *State v. Whitley,* 743 S.W.2d 482, 484 (Mo.App.1987); *State v. Lynch,* 528 S.W.2d 454, 458–460 (Mo.App. 1975). Here, McCoy knew defendant even before defendant's encounter with Carter at the house of defendant's mother. In addition, McCoy saw defendant at that encounter and recognized defendant when defendant was on the porch of Carter's residence. These facts establish the reliability of McCoy's identification. *See, e.g., State v. Whitley, supra.* And, understandably, defendant does not attack that identification as being unreliable.

Defendant next contends the trial court plainly erred in submitting the form in-

struction defining reasonable doubt, MAI–CR3d 302.04. The use of the phrase "firmly convinced of the defendant's guilt" in defining reasonable doubt, defendant contends, unconstitutionally lowers the state's burden of proof. Defendant relies on *Cage v. Louisiana,* —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

Defendant's specific contention has been rejected by this court, *State v. Tramble,* 813 S.W.2d 83, 85 (Mo.App.1991), and his general contention has been rejected by our Supreme Court. *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987).

■ Finally, defendant contends the trial court erred in granting the State's pre-trial motion in limine, which prohibited defendant from cross-examining McCoy about a prior arrest and a pending criminal charge. This cross-examination was relevant, defendant contends, to show McCoy's bias in favor of the State resulting from "deals McCoy had made with the State in exchange for his testimony."

■ Generally, the "credibility of a witness may not be attacked by showing his arrest and a pending charge which has not resulted in a conviction." *State v. Lockhart,* 507 S.W.2d 395, 396 (Mo.1974). However, such an inquiry may be made if a foundation is laid showing the inquiry will demonstrate a "possible motivation of the witness to testify favorably for the government", for example, expectation of lenient treatment. *Id.*

Here, defendant did not lay this foundation. He merely relies on his speculative and unsubstantiated claim that a possible deal had been made with McCoy for McCoy's favorable testimony. The trial court weighed these assertions against the specific and explicit statements of the assistant circuit attorney that no deals had been made.

McCoy had been arrested and charged with burglary and stealing. This charge, the assistant circuit attorney said, had been dismissed "before the Circuit Attorney handling [the present murder charge against defendant] even knew [McCoy] was a wit-ness in [the present case]. It was simply a bad case."

Also, McCoy did have a charge of possession of cocaine pending at the time of the present trial. But, the assistant circuit attorney told the trial court that she had told the attorney representing McCoy on the cocaine charge: "... no deals, no nothing, and I told [McCoy] that, too, and told [the attorney] that I told [McCoy] that, too. I said I'm terribly sorry, there's nothing I can do about your present case. [McCoy] said okay...." Moreover, she noted that McCoy had made a statement to the police and had been deposed in the present case prior to his arrest on the cocaine charge, and, she continued, McCoy's testimony at trial would not deviate from his prior statements.

Defendant offered no rebuttal to these statements by the assistant circuit attorney. Thus, the trial court had before it the specific and explicit denial of any deals, made by the assistant circuit attorney as an officer of the court, and the speculative and unsubstantiated statements of defense counsel, also made as an officer of the court. On that record, the court did not abuse its discretion in granting the State's motion in limine. *See, State v. Garmon,* 780 S.W.2d 721, 722–723 (Mo.App.1989).

### *Rule 29.15 Motion*

The trial court denied defendant's Rule 29.15 motion without an evidentiary hearing and, in support of its denial, filed detailed Findings of Fact and Conclusions of Law. These Findings and Conclusions are supported by the record and are not "clearly erroneous". An opinion affirming the denial would have no precedential value. Rule 84.16(b).

Judgments affirmed.

CARL R. GAERTNER, C.J., and SMITH, P.J., concur.