**STATE of Missouri, Respondent,**

**v.**

**Michael McROBERTS, Defendant–Appellant,**

**Michael McROBERTS, Movant–Appellant,**

**v.**

**STATE of Missouri, Respondent.**

No. 59091, 60639.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 30, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Henry B. Robertson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for State.

AHRENS, District Judge.

In this jury-tried case, defendant, Michael McRoberts, appeals his convictions of first-degree murder in violation of § 565.-020.1 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. Defendant also appeals the denial of his motion for post-conviction relief after an evidentiary hearing. In accordance with the jury's assessment, defendant was sentenced to concurrent sentences of life imprisonment without the possibility of probation or parole on the murder count and twenty-five years' imprisonment on the armed criminal action count. We affirm.

The sufficiency of evidence is not in dispute. Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. In November, 1988, defendant attended a dance with two friends, Antonio Horton and Vincent Young. During the dance, members of the "Pine Lawn Organization" youth gang attempted to initiate a fight. Young and Horton left; defendant followed shortly thereafter and stated that "Bennie" and Byron Lewis had tried to shoot him. Later that night, "Bennie" and Lewis fired upon defendant, Young, and Horton from a car. No one was injured.

At a second dance in Pine Lawn approximately one to two weeks later, Lewis attempted to apologize to defendant for the shooting. An argument ensued. Horton engaged Lewis in a fistfight and called to his friends for assistance. Horton and defendant left. Two weeks later, Lewis approached defendant at a skating rink and stated, "You almost went to your deathbed." Lewis asked defendant and Horton to fight, but they declined and left with Young.

On January 18, 1989, defendant, Horton, and Young were riding in a stolen vehicle near Goodfellow Street and St. Louis Ave-

nue in the City of St. Louis. Defendant was wearing a green Boston Celtics jacket and matching cap; Horton was wearing a blue Denver Broncos jacket and black Los Angeles Raiders cap; and Young was wearing a blue Cleveland Indians jacket without a cap. Defendant spoke of when "Bennie" and Lewis had tried to shoot him, and stated he would "kick their butt" if he ever saw them again.

Defendant saw Lewis walking toward the car and asked Horton to stop the vehicle. Defendant exited the car and instructed Horton to turn the vehicle around and meet him further down the street. Horton made two U-turns, and the car stalled. Horton and Young argued about whether to help defendant, but decided against it.

Defendant approached Lewis from behind. Young observed defendant strike Lewis with a black, "little pole like object," simultaneously heard a shot, and saw Lewis fall to the ground. Horton heard a shot and saw Lewis fall. Defendant ran toward the car, wrapping a sawed-off rifle in his jacket. Defendant instructed Horton to drive away. When the car would not start, Horton and defendant ran in one direction, while Young ran in another. Horton asked defendant what had happened, and defendant stated, "He ain't dead." A woman passing the scene in a car observed a youth in a green Celtics jacket shoot another youth in the back of the head.

As they fled, defendant and Horton saw an acquaintance, Demetrius Washington. Horton was wearing a blue Broncos jacket, and defendant was carrying a green Celtics jacket over one shoulder. When Washington asked what was happening, defendant stated, "I just shot a nigger." When Washington accused him of lying, Horton stated, "Man, we not lying. We did just shoot a dude." Defendant and Horton left Washington and ran to Horton's home. Horton remained on the porch and defendant went inside to use the bathroom. After returning, defendant and Horton walked to a nearby street corner and separated.

Horton visited a friend and returned home approximately forty-five minutes later. Horton spotted a gun in the living room and concealed it in his pants. Shortly thereafter, police arrived. Horton ran to the basement, threw the gun across the room, and hid behind the furnace. The police recovered the gun and took Horton into custody; Horton was wearing a blue jacket upon his apprehension by police.

Defendant was arrested approximately twenty-four hours later. In his mother's presence, defendant was read his Miranda[1] rights and questioned by police. Defendant admitted ownership of the Celtics jacket and cap, but denied involvement in the shooting.

In point one, defendant alleges the trial court abused its discretion in refusing his challenge for cause to venireperson O'Donnell. Defendant alleges he was denied a full panel of qualified jurors from which to make his peremptory strikes, because O'Donnell "was a former police officer, denied appellant the presumption of innocence and shifted the burden of proof to him by demanding evidence of reasons why he should not be on trial, and vacillated about his ability to obey a ruling by the court excluding a statement from evidence."

A defendant in a criminal case is entitled to a full panel of qualified jurors before being required to expend peremptory challenges, and a trial court's failure to sustain a valid challenge for cause constitutes an abuse of discretion and reversible error. *State v. Schwer*, 757 S.W.2d 258, 262 (Mo.App.1988). However, the bare possibility of prejudice will not disqualify a venireperson or deprive the trial court of the discretion to seat him or her. *State v. Treadway*, 809 S.W.2d 58, 62 (Mo.App. 1991). Rather, it must clearly appear from the evidence that the challenged venireperson was in fact prejudiced. *Id.* The trial court has considerable discretion in determining venirepersons' qualifications, and we will not overturn the court's ruling absent an abuse of that discretion. *State v.*

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Leisure,* 810 S.W.2d 560, 569 (Mo.App. 1991). We resolve doubt in favor of the trial court's findings, because the trial court is in a better position to determine whether a venireperson would be fair and impartial if chosen as a juror. *Schwer,* 757 S.W.2d at 262. Each case must be judged on its particular facts. *Id.*

 During voir dire, venireperson O'Donnell, presently a firefighter, indicated he had been previously employed as a police officer for four and one-half years, ending in 1966. Defense counsel repeatedly questioned O'Donnell concerning his ability to judge police testimony the same as he would judge the testimony of other witnesses. In response, O'Donnell stated he was "open minded," could "make [his] own judgments" on the testimony, and would not give a police officer an advantage over a civilian in judging the witnesses' credibility. Upon questioning by the state, O'Donnell stated he would not be affected by any courtroom testimony he had given in connection with his service as a police officer.

When defense counsel asked whether there was anything about O'Donnell's police experience that would tend to make him favor one side more than the other, O'Donnell stated, "Well, I've sat on defense and I've been on both sides of the fence before, so I think I can pretty well judge what I want to judge as I see it here." Lastly, O'Donnell raised his hand when defense counsel asked the venirepersons who thought it was possible for the police to arrest an innocent person.

Next, defense counsel questioned venirepersons concerning their ability to follow the burden of proof as instructed by the trial court. The following dialogue occurred:

JUROR O'DONNELL: I think you got to hear the evidence one way or another. The man is here because of a reason. Until we hear of the reasons why he shouldn't be here. That's what I came here to see here, you know.

MS. GOODMAN [Defense Counsel]: So are you saying—I don't want to put words into your mouth.

JUROR O'DONNELL: I want to hear the reason why he is here. How can I say he shouldn't be here unless I hear a reason why he is here?

MS. GOODMAN: Well, I guess that's the point I was trying to make.

JUROR O'DONNELL: He's here though.

MS. GOODMAN: Right.

JUROR O'DONNELL: There must be a reason why he is here.

THE COURT: May I? See, if Mr. Garrison stood up right now and said, Judge, we have no evidence to present, you'd all be sent home. I think that's what the defense attorney is trying to say. If he said, Judge we charged the man—

JUROR O'DONNELL: No evidence, that's not guilty.

MS. GOODMAN: Okay. But, Mr. O'Donnell, do you think that just the fact because the State call [sic] a witness or would you have to listen to what the witness has to say?

JUROR O'DONNELL: To what he had to say. I wasn't there.

MS. GOODMAN: Okay. And you're not saying because Mike is sitting here right now—

JUROR O'DONNELL: No, he's here to find out if he did or not.

MS. GOODMAN: And that's the decision that the jury would have to make?

JUROR O'DONNELL: That's why I'm here, I think.

Lastly, defense counsel questioned venirepersons concerning their possible reactions to any objections the state or defense may make at trial:

MS. GOODMAN [Defense Counsel]: Okay. Anybody who thinks that somehow is going to bother them [sic] if they think I'm interrupting the trial? Okay.

Mr. O'Donnell, that's going to bother you?

JUROR O'DONNELL: As long as it's something that might be pertinent to the case, yes, I never did like people cutting off. I mean these people—It's a profession, and I always like to hear the rest of

the statement and then objectionable or nonobjectionable, simple.

MS. GOODMAN: And Mr. Garrison and I will probably each do that in the course—

JUROR O'DONNELL: Well, I'm saying for whatever, yeah.

MS. GOODMAN: I'm just concerned if somebody doesn't like when I do it they're going to hold it against Mike because I'm his lawyer, and do you think that would happen?

JUROR O'DONNELL: I'm sure you're not going to be stopping any information that would be helpful for us jurors to make up our mind.

MS. GOODMAN: So your answer?

JUROR O'DONNELL: No problem.

Upon further questioning by the state, O'Donnell indicated he would follow the court's instructions, would not consider, speculate, or draw conclusions regarding any evidence the court ruled inadmissible in response to an objection, and would not conclude that counsel making an objection was trying to hide or conceal information.

The trial court overruled defense counsel's challenge of O'Donnell for cause, and counsel used a peremptory strike to remove him.

On this record, we find no abuse of discretion in the trial court's refusal to strike O'Donnell for cause. Despite his former police affiliation, O'Donnell expressed no preference for police testimony, had no contact with active members of the police department, and had no acquaintanceship with any of the state's witnesses. The record in no way indicates a bias toward police.

Further, O'Donnell in no way indicated a "predisposition to demand proof of innocence," as defendant suggests. In the context of the entire line of questioning, O'Donnell's statement that he "wanted to hear the reason why he [defendant] is here" was likely a comment on the state's burden to prove its case, a point defense counsel repeatedly emphasized throughout her lengthy explanation of the parties' burdens of proof and immediately before O'Donnell's comment. When the court in-

terrupted counsel's explanation of the burdens with its own explanation, O'Donnell indicated his understanding that defendant could not be found guilty if the state presented no evidence. Further, he unequivocally stated he would follow the court's instructions.

O'Donnell did indicate he preferred that a witness' testimony not be interrupted by objections. However, he also unequivocally stated he would not speculate or draw conclusions from any objections made and would follow the court's rulings with respect thereto. Nothing in O'Donnell's answers clearly indicates he was in fact prejudiced. *See Treadway*, 809 S.W.2d at 62. Resolving all doubt in favor of the trial court's findings, we find no abuse of discretion. Point one is denied.

■ In point two, defendant contends the trial court abused its discretion in limiting defense counsel's cross-examination of state's witness Demetrius Washington. The court permitted counsel to cross-examine Washington with respect to his prior conviction, but disallowed questioning concerning Washington's pending weapons charge.

■ Generally, a witness' credibility may not be attacked by showing an arrest and pending charge not resulting in conviction. *State v. Harris*, 825 S.W.2d 644, 649 (Mo. App.1992). However, such inquiry is permissible "if a foundation is laid showing the inquiry will demonstrate a 'possible motivation of the witness to testify favorably for the government', for example, expectation of lenient treatment." *Id.*, quoting *State v. Lockhart*, 507 S.W.2d 395, 396 (Mo.1974).

Here, defendant failed to lay a foundation showing such an expectation. Prior to Washington's testimony, the trial court held an *in camera* hearing regarding Washington's potential interest in testifying for the state. Washington's counsel stated, "I can inform the Court that no plea bargains or deals have been cut with regard to time or probation or anything regarding [Washington's] pending case to me. The offers would have been made to

me." At the court's instruction, counsel conferred with Washington and informed the court that Washington wished to testify on the state's behalf; again, counsel noted that "no offers have been related to me regarding his case."

Defendant's counsel also questioned Washington regarding a possible motivation to testify:

Q. [By Defense Counsel, Ms. Goodman]: My question to you is, do you believe that if you testify here today in Michael McRoberts' trial that in return for your testimony you will receive favorable treatment on your probation violation or on your pending case?

A. Okay. What do you mean by that?

Q. Do you think that this—that you will, by testifying here today, that your probation will not be revoked or—

\* \* \* \* \* \*

Q. (By Ms. Goodman): Let me start over again, Mr. Washington. If what I say doesn't make any sense, please let me know. Okay. Do you believe that if you testify in this trial that the State—you'll get a better deal on your probation revocation case or your pending case?

A. I don't know.

Q. Did anybody discuss that with you?

A. No.

Q. Did anybody discuss with you or have any promises been made to you that if you testify they [sic] will lower your bond?

A. No.

Q. And no one's made any promises to you regarding what will happen with your probation violation or your new case?

A. No.

Lastly, the prosecutor informed the trial court that Washington had been deposed prior to his arrest on the weapons charge and was expected to testify at defendant's trial in accordance with the deposition testimony.

■ Defendant is correct in his assertion that when attempting to show a witness' bias, it is not necessary to prove the existence of a deal or the state's willingness or unwillingness to deal. *State v. Joiner*, 823 S.W.2d 50, 54 (Mo.App.1991). Rather, "[w]hat is relevant is the witness' knowledge of these facts, his perception of expectancy of favorable treatment if he furthers the state's case, or his basis to fear harsh treatment if his testimony is unfriendly." *Id.* Nevertheless, the record here does not support defendant's contention that Washington had a subjective expectation of favorable treatment from the state.

Washington did not understand defendant's first question regarding the possibility of leniency, and in response to a second question answered only that he "didn't know" whether his testifying for the state might result in favorable treatment with respect to the pending weapons charge. This equivocal statement is an insufficient foundation to demonstrate a possible motivation for Washington to give testimony favorable to the state, in light of the deposition testimony he gave prior to the weapons charge, his counsel's clear statements refuting the existence of offers or deals, and Washington's own statements that no one had promised or discussed the possibility of favorable treatment.

The trial court did inform Washington the court would attempt to get his bond reduced after the appearance at defendant's trial. However, nothing indicates the court's promise "implanted" a hope of leniency in Washington, as defendant contends. The trial court expressly informed Washington that "if the bond went up in order to have you be available to get [sic] testimony today, that bond is going to go down, and I'm going to tell you that I intend to use my—I intend to try to do that promptly whether you go out there and testify or not." The court reiterated, "If you want to testify, out you go and testify. Either way, I intend to try to get that bond lowered." Nothing indicates the possibility of a bond reduction influenced Washington's decision to testify. The trial court did not abuse its discretion in disallowing

cross-examination regarding Washington's pending charge. Point denied.

■ In points three and four, defendant appeals the denial of his Rule 29.15 motion after an evidentiary hearing. In reviewing the denial, we are limited to a determination of whether the motion court's findings, conclusions, and judgment are "clearly erroneous." Rule 29.15(j). The findings and conclusions are "clearly erroneous" if a review of the entire record leaves this court with a definite and firm belief a mistake has been made. *Bibbs v. State*, 784 S.W.2d 315, 317 (Mo.App.1990).

■ Defendant contends he was denied effective assistance of trial counsel. To prevail on his assertions of error, defendant must show that counsel's performance did not meet reasonable professional standards and that this ineffectiveness affected the trial's outcome. *Hood v. State*, 785 S.W.2d 565, 567 (Mo.App.1990). If defendant makes an insufficient showing on either the performance or prejudice prong, we need not address both; further, we should dispose of a case on the ground of lack of sufficient prejudice if such is the easier course. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). Trial counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Lane v. State*, 778 S.W.2d 769, 770 (Mo.App.1989).

■ First, defendant contends his trial counsel was ineffective in failing to interview and call three witnesses to testify on his behalf: Angelica Shelton, Linda Cosby, and Charles Merry. In his *pro se* amended motion, defendant alleged Shelton and Cosby would have testified that defendant did not have a conflict with the deceased, contrary to the testimony of the state's witnesses. In an amended motion filed by counsel, defendant alleged Merry knew there was "bad blood" between the victim and state's witness Antonio Horton, and knew of no trouble between the victim and defendant.

At the evidentiary hearing on defendant's motion, defendant's trial counsel, Ilene Goodman, testified that defendant never asked her to call Shelton and Cosby as witnesses. Further, Goodman explained that Shelton and Cosby witnessed only one incident relevant to the case—an altercation between Horton and the victim that Horton admitted. Similarly, Goodman testified that Merry could only testify regarding Horton's many "run-ins" with the victim, all of which Horton admitted at trial. On this point, the motion court found counsel's decision not to call the witnesses a legitimate exercise of trial strategy. Further, the court found defendant failed to demonstrate that counsel's decision in any way affected the trial's result.

■ Ordinarily, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. *State v. Meadows*, 785 S.W.2d 635, 643 (Mo.App.1990). Nevertheless, defendant contends counsel's failure to call the witnesses was not a reasonable exercise of trial strategy, because although Horton admitted having feuded with the victim prior to the shooting, the witnesses would have impeached Horton's testimony concerning prior altercations between *defendant* and the victim.

■ We find no clear error. Initially, we note that failure to present impeachment evidence does not constitute ineffective assistance of counsel. *Lane*, 778 S.W.2d at 771. Further, in order to show trial counsel was ineffective in failing to call a witness, defendant must prove "that the witness could have been located through reasonable investigation, that the witness would have testified if called and that the testimony of said witness would have presented a viable defense." *Canterbury v. State*, 781 S.W.2d 107, 110 (Mo.App.1989). Mere speculation concerning the content of a witness' testimony is insufficient. *Id.*

■ Here, defendant failed to present the witnesses at the evidentiary hearing; therefore, there is no way to ascertain what their testimony may or may not have been. *See id.* The motion court was not required to accept defendant's testimony at

the motion hearing as true, even if it was uncontradicted. *Watkins v. State,* 813 S.W.2d 355, 356 (Mo.App.1991).[2] The court expressly found defendant's testimony unworthy of belief and found Goodman's testimony "highly credible in every respect." We defer to the motion court's determination. Defendant has failed to prove his counsel was ineffective. Point three is denied.

■ In his final point, defendant contends the motion court clearly erred in refusing to find his trial counsel ineffective for failing to object to the prosecutor's inadvertent misstatement of the evidence during closing argument. The motion court found defendant was not entitled to relief because "failure to preserve a ground for appeal is not cognizable under Rule 29.15." We find no clear error.

■ A mere failure to object to objectionable evidence or argument does not constitute ineffective assistance of counsel. *Stuckey v. State,* 756 S.W.2d 587, 591 (Mo. App.1988). Rather, "[t]he failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *Id.*

Defendant's fingerprints were recovered from the car found near the victim, but no prints were found on the murder weapon. During closing argument, the prosecutor stated:

> "Why would the Defendant, Mike McRoberts, admit to the police that he was in possession of the murder weapon, ladies and gentlemen, because he didn't know— he didn't know when he talked to the police what we know today. When he talked to the police he didn't know that his fingerprints were in that car and he didn't know that his fingerprints were on that murder weapon."

Defense counsel did not object; however, during closing argument she cited a police officer's testimony that he found no prints on the murder weapon, and implied that the officer never actually "dusted" the weapon. During its rebuttal, the state argued that defense counsel had questioned the officer's credibility with no supporting evidence. Like defense counsel, the state referenced the officer's testimony that he did in fact "dust" the weapon, but found no prints.

Under these circumstances, defense counsel's failure to object does not support defendant's claim of ineffective assistance of counsel, because the comment cannot be construed to have substantially deprived him of his right to a fair trial. *See id.* Although the prosecutor made a singular, brief misstatement of evidence, both he and defense counsel specifically argued the correct evidence before the jury. Further, the jury was instructed that closing arguments are not evidence, and the prosecutor in rebuttal reminded the jury of that fact. The motion court did not clearly err in denying defendant's motion on this basis. Point denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and KAROHL, J., concur.

**2.** At the evidentiary hearing, trial counsel answered in the negative when asked whether her investigation disclosed witnesses that could have contradicted Horton on the existence of any prior difficulties between defendant and the victim. However, it is unclear whether the statement was a reference to all or any of the three witnesses defendant contends counsel should have called.