**STATE of Missouri, Respondent,**

v.

**David Wayne FRY, Appellant.**

**No. 27163.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 24, 2006.

---

Rosalynn Koch, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Victor J. Melenbrink, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

David Wayne Fry ("Appellant") appeals his convictions for robbery in the first degree, a violation of section 569.020; kidnapping, a violation of section 565.110; two counts of assault in the second degree, violations of section 565.060; and burglary in the first degree, a violation of section 569.160.[1] Following a jury trial, the trial court sentenced Appellant as a prior and persistent offender to terms of imprisonment of eighteen years each for robbery in the first degree, kidnapping, and burglary in the first degree. See § 558.016. Appellant was also sentenced to terms of imprisonment of fifteen years each for the two counts of assault in the second degree. Appellant raises one point of trial court error. We affirm.

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Viewing the evidence in the light most favorable to the jury's verdict, State v. Smith, 185 S.W.3d 747, 751 (Mo.App. 2006), the record reveals that as Jamie Linville ("Linville") and Paula LaBoone ("LaBoone") were preparing for bed on June 2, 2005, they heard a loud knocking at the back door. As they went to investigate, they heard glass break and saw two men coming into the house. They immediately ran back into their bedroom and blocked the door. LaBoone had recognized one of the men as Appellant, who had stayed at the residence for a few weeks in early 2003. As Linville left the door to retrieve a cell phone, the men

---

**1.** All statutory references are to RSMo 2000.

forced their way into the room. Appellant was carrying a knife, and the other man, later identified as Kevin Mallet ("Mallet"), was carrying a stick. The men began hitting and beating LaBoone and Linville. Appellant threatened to cut their throats if they did not "shut up." The men forced the women into a closet, and taped their wrists together. Appellant found a set of handcuffs belonging to LaBoone, and he used them to handcuff the women to each other.

Appellant and Mallet ransacked the home, looking for anything of value. Thirty to forty-five minutes later, the men told Linville and LaBoone to go into the bathroom and take their clothes off. Appellant then cut the women's shirts off. Appellant left the bathroom, and returned shortly with a stun gun he had found in the house. He told the women "this oughta be fun" and began to shock them.

The men then told the women that "if [they] made a sound or a move to try to get out that he would cut [their] throats and burn the house down with [them] in it." The men then left, barricading the door behind them.

After thirty minutes, the women were able to free themselves. They could not get through the barricaded door, so they used a plunger and a towel rack to knock a hole in the bathroom wall. After realizing that the men had stolen their car, the women went to a neighbor's home to call the police. When the police arrived, the women were able to identify their assailants as Appellant and Mallet.

Meanwhile, Appellant went to the home of his girlfriend, April Miller ("Miller"). Appellant had in his possession some money, a stun gun, and several rings. The rings were later identified by Linville and LaBoone as rings that had been taken from their home. Appellant and Miller left and went to Mallet's home. The police

arrived fifteen minutes later, and found Appellant and Miller hiding in Mallet's bathroom. Miller was holding the stun gun Appellant had stolen. The police also found a knife at Mallet's home, which was later identified as the one used during the robbery.

In his only point on appeal, Appellant maintains the trial court abused its discretion by not allowing cross-examination of LaBoone and Linville regarding criminal charges pending against LaBoone because such evidence was relevant to the credibility of LaBoone's testimony in view of the fact that the same prosecutor that was prosecuting her case was also prosecuting Appellant's case, thus providing a "possible motivation" for LaBoone to testify in favor of the State.

■ A trial court's ruling on the admissibility of evidence will be disturbed only where there is an abuse of discretion. *State v. Robinson*, 111 S.W.3d 510, 513 (Mo.App.2003).

> A trial court abuses its discretion when its ruling is 'clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the court abused its discretion.'

*State v. Rayborn*, 179 S.W.3d 298, 299 (Mo.App.2005) (quoting *State v. Roller*, 31 S.W.3d 152, 158 (Mo.App.2000)). In order to have his conviction reversed, Appellant must show both error and resulting prejudice. *State v. Edberg*, 185 S.W.3d 290, 293 (Mo.App.2006). In order to show prejudice, Appellant must demonstrate that "in the absence of such error a reasonable probability exists that the verdict would have been different." *Id.*

A ... defendant [in a criminal trial] has a constitutional right to confront the witnesses against him. U.S. Const. amend. VI and XIV; MO. Const. art. I, § 18(a). This includes the right to cross-examine a witness to expose to the jury any motivation, including potential bias or prejudice, which may influence his testimony.

*State v. Thomas,* 118 S.W.3d 686, 689 (Mo. App.2003).

 Generally, "the credibility of a witness may not be attacked by showing his arrest and a pending charge which has not resulted in a conviction." *State v. Lockhart,* 507 S.W.2d 395, 396 (Mo.1974). An exception to this general rule exists: (1) "where the inquiry shows a specific interest of the witness[;]" (2) "where it shows a possible motivation of the witness to testify favorably for the government[;]" or (3) "where it shows the testimony of the government witness was given in expectation of leniency." *Id.; State v. Franklin,* 16 S.W.3d 692, 695 (Mo.App.2000).

Here, Appellant alleges that the trial court abused its discretion by not permitting his defense counsel to cross-examine both LaBoone and Linville to show that each had a possible motivation to testify favorably for the State. As previously related, LaBoone faced criminal charges for possession of a controlled substance in a totally different case which had been filed by the same prosecutor.

Prior to trial, the State filed a motion in limine seeking, *inter alia,* to prevent Appellant from presenting evidence regarding LaBoone's pending criminal charges. In support of its motion, the prosecutor stated to the trial court:

Judge, I can state for the record that there has been no offer, no deal has been made. No offer, no deal will be made. These are totally and completely unrelated matters. [LaBoone] is charged with a possession—in a possession case that is completely and totally separate from this. She has never sought or does her attorney think there's going to be any leniency in exchange for this testimony. She is the *victim* in the [instant] offense, not a witness about—you know, a codefendant witness or anything like that in which there may be some reasonable inference that there's going to be some expectation of leniency. It is a totally separate and unrelated matter.

(Emphasis added). In response to the trial court's inquiry regarding existing deals for LaBoone's testimony, the prosecuting attorney answered:

No, Your Honor. There's been none. I would also point to her deposition testimony in the case of the codefendant where she was asked that question and indicated that she neither had received any communication of any promises, threats or anything like that and had no expectation in her mind, that these matters were totally separate and no association as far as she was concerned.

Appellant's defense counsel countered that "no matter what [LaBoone] testifies, the jury can find that she has a bias and that she is hoping that [the prosecutor] will do something good for her at the conclusion of this case." Defense counsel also opined that "it's inherent in human nature that when someone has something—and certainly a felony charge is a threatening type of situation, that when you are helping that person, you are hoping that this will help your matter."

The trial court then granted defense counsel permission to conduct *voir dire* examinations of Linville and LaBoone with regard to LaBoone's pending charges.

LaBoone explained that she had a pending charge for possession of a controlled

substance in another criminal case. She also related that the pending charge was being pursued by the same prosecuting attorney as was prosecuting the instant case. Defense counsel then inquired of LaBoone, "so you don't want to do anything to upset [the prosecuting attorney]," and LaBoone responded, "[i]f I upset [the prosecuting attorney], I upset him. I mean, all I'm going to do is tell the truth."

LaBoone also maintained no offers had been made to her in exchange for her testimony in the present case and stated she was not "hoping or expecting any leniency in connection with [her] case as a result of [her] testimony."

Following the *voir dire* examination of LaBoone, the trial court found that "[LaBoone] shall not be interrogated or questioned about any pending unrelated criminal prosecution." Also, following *voir dire* of Linville, the trial court directed that "no statements, questions or argument be made concerning any unrelated prosecution of [LaBoone] in the examination of [Linville]."

In support of the proposition that the trial court erred in not permitting cross-examination of both LaBoone and Linville, Appellant posits that in *State v. Joiner*, 823 S.W.2d 50, 54 (Mo.App.1991), the Eastern District of this Court held that "[w]hen showing bias, it is not necessary to prove the existence of a deal or the [S]tate's willingness or unwillingness to deal." "What is relevant is the witness' knowledge of these facts, his perception of expectancy of favorable treatment if he furthers the [S]tate's case, or his basis to fear harsh treatment if his testimony is unfriendly." *Id.*

We note, however, that less than a year later, the court in *State v. Harris*, 825 S.W.2d 644, 649 (Mo.App.1992), determined that the trial court in *Harris* had not erred in prohibiting cross-examination of a witness regarding pending criminal charges, where no foundation was laid showing the inquiry would demonstrate a possible motivation for the witness to testify favorably for the government. In *Harris*, the defendant sought to cross-examine witness McCoy about a prior arrest for burglary and stealing that had been dropped by the State as well as a pending charge for possession of cocaine. *Harris*, 825 S.W.2d at 649. The trial court granted the State's pre-trial motion in limine prohibiting the defendant's counsel from cross-examining McCoy about his prior arrest and his pending charge. *Id.* The record shows that the assistant circuit attorney, as an officer of the court, informed the trial court that she had previously told McCoy's attorney that there were "no deals, no nothing, and [she] told [McCoy] that, too, and told the attorney that [she] told McCoy that, too." *Id.* The assistant circuit attorney went on to explain that she told McCoy that she was "terribly sorry, there's nothing [she] c[ould] do about [his] present case. McCoy said okay...." *Id.* The assistant circuit attorney also explained that "McCoy had made a statement to the police and had been deposed in the present case prior to his arrest on the cocaine charge, and ... McCoy's testimony at trial would not deviate from his prior statements." *Id.*

The reviewing court also noted that the *Harris* defendant's counsel "offered no rebuttal to the statements of the assistant circuit attorney." *Harris*, 825 S.W.2d at 644. According to the *Harris* court, "the trial court had before it the specific and explicit denial of any deals, made by the assistant circuit attorney as an officer of the court, [versus] the speculative and unsubstantiated statements of defense counsel, also made as an officer of the court." *Id.* "On that record, the [trial] court did

not abuse its discretion in granting the State's motion in limine." *Id.*

Similarly, in *State v. McRoberts,* 837 S.W.2d 15, 20–21 (Mo.App.1992), the appellate court found that the trial court had not abused its discretion in limiting defense counsel's cross-examination of a State's witness regarding a pending weapons charge. In *McRoberts,* the record revealed that prior to the testimony of witness Washington, "the trial court held an in camera hearing regarding Washington's potential interest in testifying for the [S]tate." *Id.* at 20. "Washington's counsel stated, 'I can inform the [trial] [c]ourt that no plea bargains or deals have been cut with regard to time or probation or anything regarding [Washington's] pending case....'" *Id.* The prosecutor also informed the trial court that the witness "had been deposed prior to his arrest on the weapons charge and was expected to testify ... in accordance with the deposition testimony." *Id.*

The record further showed that witness Washington answered in the negative, when asked if he had been "made any promises ... regarding what w[ould] happen with [his] probation violation or [his] new case" were he to testify. *Id.* However, when asked if he believed that "if [he] testif[ied] in this trial that [he would] get a better deal on [his] probation revocation case or [his] pending case," witness Washington answered, "I don't know." *McRoberts,* 837 S.W.2d at 21.

The reviewing court in *McRoberts* acknowledged that the *McRoberts* defendant was correct in his assertions that "when attempting to show a witness' bias, it is not necessary to prove the existence of a deal or the [S]tate's willingness or unwillingness to deal." *Id.* Nevertheless, the *McRoberts* court noted that " 'what is relevant is the witness' knowledge of these facts, his perception of the expectancy of

favorable treatment if he furthers the [S]tate's case, or his basis to fear harsh treatment if his testimony is unfriendly.' " *Id.* (quoting *Joiner,* 823 S.W.2d at 54). The court then found that the record did not support the defendant's contention that the witness had a "subjective expectation of favorable treatment from the [S]tate." *Id.* It observed that even witness Washington's

> equivocal statement is an insufficient foundation to demonstrate a possible motivation for [the witness] to give testimony favorable to the [S]tate, in light of the deposition testimony he gave prior to the [pending] charge, his counsel's clear statements refuting the existence of offers or deals, and [the witness's] own statements that no one had promised or discussed the possibility of favorable treatment.

*Id.*

■ In our review of the present case, the record reveals the prosecuting attorney informed the trial court that no deals would be offered to LaBoone for her testimony. LaBoone confirmed that no offers had been made to her in exchange for her testimony, and she stated she was not "hoping or expecting any leniency in connection with [her] case as a result of [her] testimony." The defense countered these assertions with the speculation "that [the prosecutor] will do something good for her at the conclusion of this case." However, "[s]peculating or theorizing motives for testifying is not sufficient to show the connection that is necessary to obviate the trial court's discretion." *State v. Watts,* 813 S.W.2d 940, 943 (Mo.App.1991). "[T]he trial court had before it the specific and explicit denial of any deals, made by the [prosecuting attorney] as an officer of the court, and the speculative and unsubstantiated statements of defense counsel, also made as an officer of the court."

*Harris,* 825 S.W.2d at 649. On the record before us we cannot say the trial court abused its discretion by not permitting defense counsel to examine either La-Boone or Linville regarding LaBoone's pending charges in another case. Based on the foregoing facts, it is clear that Appellant failed to lay the necessary foundation that would allow inquiry into La-Boone's pending charges on cross-examination. *McRoberts,* 837 S.W.2d at 20.

Furthermore, *Joiner* makes it clear that the relevant inquiry is whether the State's unwillingness to deal has been communicated to the witness, and whether the witness maintains a "perception of expectancy of favorable treatment if [she] furthers the [S]tate's case...." *Joiner,* 823 S.W.2d at 54. In the instant case, the record clearly reflects the State's unwillingness to make a deal with LaBoone in her criminal case in exchange for her testimony in the instant case. The record further shows the State's unwillingness to deal had been communicated to LaBoone. Just as important is the fact that LaBoone was not only a witness in this case; *she was also a victim.* This clearly provided her with a reason to testify truthfully as to what had happened to her in the instant matter. Additionally, LaBoone had previously testified in deposition that she did not expect leniency in her criminal case, and that she intended to tell the truth. Under the circumstances of the present case, *Joiner* is factually distinguishable. Appellant's point is denied.

The judgment of conviction is affirmed.

BATES, C.J., and LYNCH, J., concur.