Jeffrey A. GALINDO, Appellant,

v.

STATE of Missouri, Respondent.

No. 23423.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 6, 2000.

Motion for Rehearing or Transfer
Denied Oct. 30, 2000.

Application for Transfer Denied
Dec. 5, 2000.

Mark A. Grothoff, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Chief Judge.

Jeff Galindo was convicted, following a jury trial, of statutory sodomy in the first degree, § 566.062, RSMo 1994. Defendant was sentenced as a prior and a persistent offender, § 558.016, RSMo 1994, to life imprisonment. The jury found that Galindo sodomized a four-year-old girl that he was babysitting. Following his direct appeal and this Court's affirmation of his conviction and sentence, Galindo filed a motion for post-conviction relief under Rule 29.15, Missouri Court Rules (1998). An evidentiary hearing was held and the motion court denied Galindo's motion on November 22, 1999. Galindo appeals this denial asserting, in three points, that the motion court's denial was error because his trial counsel was ineffective in: failing to object to comments by the prosecutor during voir dire that redefined reasonable doubt and lessened the State's burden of proof; failing to object when the State's redirect examination of the victim's aunt "exceeded the scope of cross-examination";

and failing to object to the State's improper closing argument.

The facts of the case can be found in our opinion on Galindo's direct appeal: *State v. Galindo*, 973 S.W.2d 574 (Mo.App.1998). Briefly, Galindo was arrested after the victim's aunt-hoping to surprise the victim-dropped by the house trailer where Galindo was babysitting the victim and two other children. When she arrived she found Galindo in the bathroom sitting on the toilet with his pants around his ankles and the victim standing in front of him with her pants pulled down. The victim told her aunt and the doctor that performed a subsequent physical exam that Galindo had licked his fingers and put them in her "Moo-mo," which she described by pointing to her genital area, and that Galindo had made her lick his "thing" or "wee-wee." The medical examination showed evidence of sexual assault and Galindo gave a statement to the police admitting that he had placed his hand in the victim's panties and touched the victim in her "private parts." We shall discuss further facts, essential to this appeal, as needed.

■ On appeal from the denial of a Rule 29.15 motion, we review the findings of fact and conclusions of law of the motion court to determine whether they are clearly erroneous. *See State v. Parker*, 886 S.W.2d 908, 933 (Mo. banc 1994). We will find clear error only if, after examining the entire record, we are left with a definite and firm impression that a mistake has been made. *See State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996), *cert. denied*, 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997); *Hatcher v. State*, 4 S.W.3d 145, 147 (Mo.App.1999).

■ To prevail on a claim of ineffective assistance of counsel, a movant must show first that his counsel failed to exercise the customary skill and diligence that a reasonable competent attorney would under the same or similar circumstances and, second, that this failure prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Here, Galindo must overcome a strong presumption that his trial counsel was competent. *See Perry v. State*, 11 S.W.3d 854, 858 (Mo.App.2000). A defendant has been prejudiced if there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998).

### I.

■ In his first point, Galindo claims that his trial counsel was ineffective in failing to object to comments made by the prosecutor during voir dire that redefined "reasonable doubt" and lessened the State's burden of proof.

During voir dire, the prosecutor reminded the jury panel that the crime Galindo was charged with was a serious one and that, consequently, the possible punishment was severe. He then asked if there was anyone who believed that he or she "should have no doubt in [his or her] mind whatsoever before [he or she] could find someone guilty of the crime where the punishment is severe." Many of the members of the panel raised their hands and said they would have to be "sure," "convinced," etc. Although the trial court had previously read the State's burden of proof and the definition of reasonable doubt to the jury, it evidently believed the members of the panel were confused about what was being asked. The court interrupted the prosecutor, re-read the instruction and definition, and asked the panel if they could comply with the instruction. The members said that they could. Before moving on to a different line of questioning, the prosecutor then stated:

Just to make sure that you understand that you can still have doubts, the state is not required to prove beyond all doubt. You must be firmly convinced beyond a reasonable doubt and if you can do that that's fine, that's what's required by the law, but if you are going

to require the state to proof [sic] beyond any doubt in your mind whatsoever that isn't a reasonable doubt. That is well beyond that standard. So, think about that. If you think that's what you are going to require let us know because that puts us in a situation where we have to prove something well beyond what is required by the statute or by the law as the Court has given it to you.

Galindo contends that, by stating to the jury that "proof beyond any doubt in your mind whatsoever" is a standard that is "well beyond" the standard of "reasonable doubt," the prosecutor crossed then line between discussing "reasonable doubt" and defining it.

■ Prosecutors are allowed to discuss the concept of reasonable doubt with juries and venires. *See State v. Brown,* 822 S.W.2d 529, 530 (Mo.App.1991). What the prosecutor is not allowed to do is to define reasonable doubt for the jury or venire. *See id.*

■ Clearly it was unwise for the prosecutor to attempt to quantitate these two standards by placing them on some sort of spectrum or continuum with "proof beyond any doubt in your mind whatsoever" falling "well beyond" proof beyond a "reasonable doubt." While not directly defining the concept, it was an attempt to flesh out the statutory definition given by the trial court in the State's favor. Nevertheless, "brief remarks purporting to define 'reasonable doubt,' although improper, do not result in reversible error so long as counsel does not unduly dwell upon the definition." *State v. Williams,* 659 S.W.2d 778, 782 (Mo. banc 1983). Here, the trial court had initially instructed the venire as to reasonable doubt and had re-instructed them when it thought that they were getting confused. *See State v. Storey,* 901 S.W.2d 886, 892 (Mo. banc 1995). The prosecutor, after making the questioned remarks, did not dwell on the remarks and immediately moved on to a different line of questioning.

■ Furthermore, for Galindo to prevail there has to be a reasonable probability that, but for his trial counsel's failure to object to the questioned remarks, he would not have been convicted. *See Clay,* 975 S.W.2d at 135. Here, the trial court instructed the jury a number of times on the correct standard. The prosecution did not address reasonable doubt in its closing other than to tell the jury that they would have to find Galindo guilty beyond a reasonable doubt and to then direct them to the trial court's instructions. With the evidence that was presented and the number of times the jury was properly instructed, we can't say there is a reasonable probability that, but for his trial counsel's failure to object to the prosecutor's brief remarks, Galindo would not have been convicted. Galindo's first point on appeal is denied.

## II.

In his second point, Galindo claims his trial counsel was ineffective in failing to object to the State's redirect examination of the victim's aunt. Galindo claims that the State's redirect exceeded the scope of cross-examination by introducing new evidence that the victim's aunt testified that the victim told her Galindo made her "lick his thing."

■ "It is proper on redirect examination to examine a witness on any matter which tends to refute, weaken or remove any unfavorable inferences resulting from testimony on cross-examination." *State v. McWhorter,* 836 S.W.2d 506, 508 (Mo.App. 1992).

■ During the prosecution's direct examination of the victim's aunt, the aunt testified, *inter alia,* that the victim made statements to her at two different times and that the first time the victim told her that Galindo had licked his fingers and put them in her "Moo-mo."

On cross-examination, defense counsel questioned Aunt about her demeanor after finding the victim with Galindo, evidently

attempting to imply that Aunt scared the victim into making up a story. Further, defense counsel elicited Aunt's testimony that she did not actually witness any sexual contact.

On re-direct, the following exchange took place:

Q: ... you said that you had talked to [Victim] twice.

A: Yes.

Q: And the first time she said that the defendant had licked his finger and put it in her "Moo-mo."

A: Yes.

Q: And you also mentioned that she said something the second time.

A: Yes.

Q: What did she say the second time you asked her?

A: ... I said did he do anything else to you and she told me that he made her lick his thing, which I took it as his penis.

We determine, however, even if the complained of testimony improperly went beyond the scope of cross-examination, "[a]ny error in the admission of testimony which is merely cumulative of other matters testified to by another witness without objection, is, of necessity harmless." *McWhorter*, 836 S.W.2d at 508.

Here, the doctor who performed the sexual assault forensic examination on the victim, Dr. Preuschoff, testified she had the following exchange with the victim:[1]

... I said, "Did he do anything else," and she said, "he made me suck him on the—" and then there was a pause and she kind of put her head down and she said, "my mommy won't let me—" and I said, "Please tell me," and she said, "his wee-wee." ... And I asked again, "What did he make you do," and she said, "he made me suck his pee-pee." ... And then I asked, "Did something

else happen," and she said, "he made my back hurt."

The doctor further testified that the physical examination of the victim revealed not only red marks on the victim's genitalia but finger marks on her back consistent with Galindo "holding onto the child while ... *the penis was in her mouth.*" (emphasis added). Considering the doctor's testimony, under the precepts set out in *McWhorter, supra,* any error resulting from Aunt's testimony on re-direct was cumulative and, hence, not prejudicial *per se. McWhorter,* 836 S.W.2d at 508. Galindo's second point on appeal is denied.

## III.

In his third point on appeal, Galindo argues his trial counsel was ineffective in failing to object to three improper statements in the prosecutor's closing arguments. Galindo complains that his trial counsel should have objected to the prosecutor stating: 1) "[the victim] and several witnesses have told you that the defendant stuck his finger in her vagina"; 2) in regard to defendant sticking his finger in [the victim's] vagina, "that is a penetration by the finger of the female sex organ and that's by the definition for the sexual desire of any person"; and 3) "the doctor said it was 99.9 percent certain that the child had been molested."

Galindo first complains that the prosecutor misstated the evidence because [the victim] actually testified that Galindo "done bad things to me" and not that he "stuck his finger in her vagina." The record confirms Galindo's claim. However, we do not think Galindo was prejudiced by his trial counsel's failure to object to the prosecutor's brief misstatement and that a reversal is required. A mere "failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel." *Stuckey v. State,* 756 S.W.2d 587, 591 (Mo.App.1988). Rather,

---

1. Over hearsay objections made by defense counsel, the trial court ruled that the testimony of both the Aunt and Dr. Preuschoff was admissible under section 491.075, RSMo 1994. *See Galindo,* 973 S.W.2d at 577–79.

"[t]he failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *Id.*

First, the misstatement was brief and not repeated. *See State v. McRoberts,* 837 S.W.2d 15, 23 (Mo.App.1992) (singular brief misstatement of evidence in closing argument did not substantially deprive defendant of right to a fair trial). Second, the trial court had instructed the jury immediately prior to the closing arguments that the arguments were not evidence. *See id.* Third, any prejudice caused by the misstatement was further mitigated when the prosecutor went on to specifically discuss the victim's testimony:

> Now, you had the opportunity to hear from [the victim] and she told you in her own words that Jeffrey Galindo done bad things to me that he wasn't supposed to. And the defense will try to make you believe that this case has no value maybe just because [the victim] doesn't tell you exactly what it was that the defendant did do to her. But my goodness it was a very scary thing that happened to her and [the victim] knows that what happened to her, that what Jeffrey Galindo did was wrong. I know that [the victim] may not be the most reliable witness in the world, but the prosecution does not choose the witnesses, the defendant chose this witness. The defendant chose a four year old to be his victim.

The prosecutor clearly acknowledged and attempted to discount the victim's inability to specifically describe what happened to her. Considering the fact that the prosecutor reminded the jury the victim could not be specific about what happened, immediately after improperly stating that she had testified that Galindo stuck his finger in her vagina, we do not discern how Galindo's trial counsel's failure to object to the prosecutor's brief misstatement affected the outcome of the trial.

■ We next turn to the prosecutor's statement that Galindo stuck his finger in the victim's vagina and "that is a penetration by the finger of the female sex organ and that's by the definition for the sexual desire of any person." Galindo claims that this statement "negates the jury's duty to find that any touching was for the purpose of gratifying the sexual desire of a person, which is an element of the crime." We disagree.

The context of the prosecutor's statement is important. She first reviewed instructional definition of deviate sexual intercourse. She then directed the jury to the two acts that Galindo was accused of performing: sticking his finger in the victim's vagina and placing his penis in her mouth. While the complained of statement—that Galindo stuck his finger in the victim's vagina and "that is a penetration by the finger of the female sex organ and that's by the definition for the sexual desire of any person"—is somewhat ambiguous, we believe that, when read in context, the prosecutor was actually arguing that Galindo's actions fit under the definition of deviate sexual intercourse that she had just read to them. This argument is proper since a prosecutor has wide latitude in closing arguments and may argue inferences justified by the evidence and supported by the facts. *See State v. Barton,* 936 S.W.2d 781, 783–84 (Mo. banc 1996). The evidence that Galindo hid in the bathroom of the trailer, licked his finger, and placed it in the vagina of a four-year-old girl, certainly justified an inference that he did so in order to gratify his deviate sexual desire.

■ Galindo's argument as to the final statement is also meritless. He complains the prosecutor misstated the evidence when she argued in closing that the doctor that performed the sexual assault exam stated that she was 99.9% certain the victim had been assaulted. Galindo points out, correctly, that the doctor actually testified she was "greater than ninety-nine percent" certain sexual assault had oc-

curred. Galindo's defense counsel testified at the motion hearing that he did not object because he believed the doctor sounded "snotty" when she testified that the percentage was "greater than ninety-nine percent" and he wanted to leave the jury with that image. Galindo has not overcome the presumption that his trial counsel's failure to object was sound trial strategy. *See State v. Tokar*, 918 S.W.2d 753, 766 (Mo. banc 1996). Galindo's third and final point on appeal is denied.

The judgment denying Galindo's 29.15 motion is affirmed.

PREWITT, J., concurs.

CROW, J., concurs.