

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| LAURENCE C. HAYS, II, | ) |
| | ) |
| Appellant, | ) |
| | ) WD77877 |
| v. | ) |
| | ) OPINION FILED: |
| | ) December 22, 2015 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Larry D. Harman, Judge**

**Before Division II:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and James Edward Welsh, Judges

Mr. Laurence C. Hays ("Hays") appeals from the Judgment of the Circuit Court of Clay County, Missouri ("motion court"), denying his Rule 29.15 motion for postconviction relief, after an evidentiary hearing. We affirm.

## Factual and Procedural Background[1]

G.B. ("Victim") is Hays's biological daughter. During Victim's childhood, Hays did not live with her. He would be gone for long periods of time and have no communication with her. When Victim was five years old, she was adopted by her paternal grandmother ("Grandmother").

---

[1] "On review of a denial of post-conviction relief, the facts are interpreted in the light most favorable to the verdict." *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) (internal quotation omitted).

Victim was fifteen years old in October 2009. She had not seen Hays in ten years. In late October 2009, Victim, her sister, and Grandmother drove to Kansas City, picked up Hays, and brought him back to Marshall, Missouri, to live with them in Grandmother's house. Victim was excited that she was going to have a father figure in her life.

When Victim returned from Kansas City, she was asked to babysit. Hays said he wanted to go with her for "bonding time." Victim and Hays arrived at the babysitting location at 11:30 p.m., and Victim fed the children and put them to bed while Hays was outside smoking. Because there was no couch, Victim lay down on the floor on some blankets. Hays lay down beside and behind Victim, pulled down Victim's pants, and put his fingers in her vagina. Victim got up every five minutes, ostensibly to use the bathroom. When Victim returned, she moved closer to the wall, but Hays would scoot closer to her, touching her "a lot" that night. Victim did not tell anyone what Hays had done because she was scared. Every night for the next two or three weeks, Hays came into Victim's bedroom and put his fingers in her vagina while she was in her bed.

On Halloween 2009, Victim was planning on going to an all-night skating party. In the afternoon, she lay down in her bed for a nap before the party. Grandmother was not at home. Hays came into her room. Victim woke up when Hays pulled down his pants, put his hands on her hips, and "stuck his penis in [Victim's] bottom." Hays did not touch Victim after this incident.

On November 18, 2009, Hays saw Victim walking home from school with a male classmate of mixed race. In the presence of Victim and her classmate, Hays started yelling at Victim, saying she was not going to be seen with a "n[****]r." Hays pushed Victim all the way home. When Victim got home, she called Grandmother because she was tired of Hays hurting

her. When Grandmother came home, she told Hays to leave. Victim then told Grandmother that Hays had touched her, and Grandmother called the police.

On November 19, 2009, Dr. Tierra Frazier performed a forensic examination of Victim. Dr. Frazier also interviewed Victim and Grandmother for Victim's history; Victim alleged that Hays had assaulted her multiple times by digital penetration and had attempted anal penetration. Dr. Frazier concluded that Victim's disclosure, physical examination, and symptoms of trauma were consistent with a child who had experienced child sexual abuse.

On November 25, 2009, Beth Jackman, a forensic interviewer at Childsafe of Central Missouri, interviewed Victim. Victim disclosed that Hays digitally penetrated her with his finger in her vagina; that the abuse continued to occur on an almost daily basis in the same manner; that Hays once inserted his penis into her butt or bottom; and that she disclosed the abuse to Grandmother after a disagreement with Hays regarding her talking to a boy he referred to by the "n" word.

During an interview with the police after his arrest, Hays denied that he had done anything to Victim. He believed Victim gave her statement to the police because he and Victim had gotten into an argument, and she was upset with him because he thought she was dating a black man.

Hays was charged as a prior and persistent offender with three counts of statutory sodomy in the second degree for having deviate sexual intercourse with Victim. The jury found Hays guilty as charged. The trial court sentenced Hays to twelve years on each count, with the twelve-year sentence on Count I to be served consecutive with Counts II and III, the twelve-year sentence on Count II to be served consecutive with Count I but concurrent with Count III, and the twelve-year sentence on Count III to be served consecutive with Count I but concurrent with

Count II.  The trial court also ordered Hays to register as a sex offender.  Hays's convictions were affirmed on direct appeal.  *State v. Hays*, 396 S.W.3d 385 (Mo. App. W.D. 2013).

Thereafter, Hays timely filed a pro se Rule 29.15 motion for postconviction relief.  Appointed counsel timely filed an amended motion.  The motion court held an evidentiary hearing during which Hays's trial counsel, direct appeal counsel, and forensic interviewer Jackman testified.  The motion court made findings of fact and conclusions of law and entered judgment denying Hays's Rule 29.15 motion.

Hays timely appealed.

**Standard of Review**

Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous.  Rule 29.15(k).  The motion court's findings and conclusions are presumed to be correct.  *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009).  To overturn the motion court's judgment, the appellate court must be left with a "definite and firm impression that a mistake has been made."  *Id.* (internal quotation omitted).

"To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test."  *Id.*  "First, the movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation."  *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).  Second, the movant must show that he was prejudiced by trial counsel's failure.  *Id.*  "Both of these prongs must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel."  *Id.*

4

To meet the performance prong of the *Strickland* test, Hays must overcome a strong presumption that trial counsel's conduct was reasonable and effective. *Id.* at 176. "To overcome this presumption, [Hays] must point to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted). "To satisfy the prejudice prong of the *Strickland* test, [Hays] must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different." *Id.* If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Hays's claim of ineffective assistance of counsel must fail. *Strickland*, 466 U.S. at 697.

### Analysis

Hays raises ten points on appeal, which fall into two major groups: failure to cross-examine and failure to object. For ease of analysis, we have grouped the two points relating to failure to cross-examine together (Points IV and V). We have further grouped all of the points relating to failure to object together (Points I, II, III, VI, VII, VIII, IX, and X).

### Failure to Cross-Examine (Points IV and V)

In Hays's fourth point, he asserts that the motion court clearly erred in overruling his postconviction motion because he received ineffective assistance of counsel in that trial counsel failed to adequately cross-examine Jackman. In his fifth point, he claims that the motion court erred in basing its denial of Hays's claim on failure to object rather than failure to cross-examine.

At trial, Jackman testified about her training and about seminars she had attended where the work of Dr. Roland Summit had been taught. She explained that Dr. Summit wrote an "educational paper" called "The Child Sexual Abuse Accommodation Syndrome" ("CSAAS"), in which he described five phases common among children who are sexually abused: secrecy,

5

helplessness, entrapment and accommodation, delayed disclosure, and retraction. Jackman testified that CSAAS "is not a diagnostic tool. It is simply an educational paper." The prosecutor asked Jackman whether, during her interview with Victim, Victim told her anything "that reflected some of the issues that you've already discussed." Jackman cited secrecy and delay in disclosure. Trial counsel did not object to Jackman's testimony; instead, he cross-examined her about Victim's disclosures. Jackman testified that she only gets the child's version of events, she is not a psychologist or psychiatrist, and her interview with Victim lasted about twenty-five minutes.

In Hays's amended Rule 29.15 motion, he alleged that counsel was ineffective for failing to adequately cross-examine Jackman on CSAAS, "in that the factors in CSAAS are not to be used to determine whether an incident happened but are merely used to prevent the discounting of a sexual assault." He alleged that he was prejudiced because trial counsel's failure to adequately cross-examine Jackman "allowed the jury to infer that the presence of some of the CSAAS factors meant that [Victim] had been sexually assaulted."

At the postconviction evidentiary hearing, Jackman testified that CSAAS was presented as an "educational tool," and it was "not meant to in any way determine . . . whether or not there was abuse." She stated that the purpose of the CSAAS was "to help us understand how children sometimes delay in their disclosure and the reasons for that." Jackman confirmed that her testimony at trial was not aimed at establishing whether or not Victim was sexually abused. At the motion hearing, when trial counsel was questioned about his failure to adequately cross-examine Jackman regarding CSAAS, he testified that it sounded to him like CSAAS was "more of a theoretical idea, concept as an educational tool, but that it's not necessarily admissible as diagnostic in the sense that that proves somebody was abused." He testified that

6

there was no strategic reason not to cross-examine Jackman about the appropriate uses of CSAAS. However, on cross-examination, trial counsel clarified that if Jackman told the jury CSAAS was not diagnostic, it would not imply the opposite. The motion court determined that Jackman made it abundantly clear at trial that CSAAS is not a diagnostic tool; thus, there was no need to cross-examine her about it because she had already testified to it on direct examination.

We agree with the findings of the motion court. "The extent of cross-examination is usually a matter of trial strategy." *Rios v. State*, 368 S.W.3d 301, 310 (Mo. App. W.D. 2012) (internal quotation omitted). "A movant does not overcome the strong presumption that counsel had a strategic reason for his decision even where trial counsel fails to verbalize a trial strategy for his decision." *Id.* The record shows that Jackman testified on direct examination that CSAAS is not a diagnostic tool; it is "simply an educational paper" that describes five phases common among children who are sexually abused. Our evaluation of the entire record leads us to conclude that Hays's trial counsel performed in a reasonably competent, professional manner, and there was no need to cross-examine Jackman further about what she testified to on direct examination regarding CSAAS.

Hays also claims, in Point V, that the motion court erred in basing its denial of Hays's claim on failure to object rather than failure to cross-examine. We disagree. After rejecting Hays's cross-examination claim, the motion court gratuitously noted that because the trial court has broad discretion in admitting generalized testimony regarding sexually abused children, the trial court would have exercised its discretion to overrule an objection made on that ground. The motion court's gratuitous observation was not the grounds for denying Hays's claim; rather, it was a response to Hays's assertion in his amended motion that "had trial counsel objected, there is a reasonable probability that the outcome of the case would have been different or [the court]

7

would have sentenced Mr. Hays to a lesser term of imprisonment." Thus, Hays's suggestion that the motion court has somehow improperly characterized the basis of the postconviction relief motion is without merit.

Because Hays did not satisfy the performance prong of the *Strickland* test for proving ineffective assistance of counsel, we need not consider the prejudice prong. *Strickland*, 466 U.S. at 697.

Points IV and V are denied.

## Failure to Object

## Witness Testimony (Points I, II, and III)

"Decisions about whether or when to make objections at trial are left to the judgment of counsel." *Helmig v. State*, 42 S.W.3d 658, 678 (Mo. App. E.D. 2001). "Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances." *Id.* (internal quotation omitted). "Failing to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused's right to a fair trial." *Id*. "Counsel's failure to object to particular evidence can constitute mere 'trial error' not rising to constitutional proportions and thus not cognizable in a post-conviction motion." *Id.* (internal quotation omitted). "[M]ovant must show that counsel's overall performance fell short of established norms and that this incompetence probably affected the result." *Id.* at 679. "Otherwise, counsel's failure to object constitutes only a procedural default, precluding appellate or collateral relief." *Id.*

In arguing ineffectiveness based upon failure to object, movant must overcome a strong presumption that counsel's failure to object was sound trial strategy. *Id.* "In many instances,

8

seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Id*. "The entire record is considered when interpreting a closing argument, not an isolated segment." *State v. McFadden*, 369 S.W.3d 727, 747 (Mo. banc 2012) (internal quotation omitted).

### Dr. Frazier

In Hays's first and second points, he asserts that trial counsel was ineffective for failing to object to Dr. Frazier's conclusion that Victim had been sexually assaulted.

Dr. Frazier performed a forensic examination of Victim the day after Victim reported the abuse. Dr. Frazier also interviewed Victim and Grandmother for Victim's history; Victim alleged that Hays had assaulted her multiple times by digital penetration and had attempted anal penetration. Dr. Frazier testified that based on her physical findings and what Victim told her, it was her opinion that they were consistent with a child who had been sexually abused:

> Q [by prosecutor]: Now, based upon your education and training, your experience, your dealing with, you know, several hundred children and the studies that you've read, did, in this case, did you reach a conclusion to a reasonable degree of medical certainty as to whether or not it was your opinion that this child had been sexually assaulted?
>
> A [by Dr. Frazier]: I did.
>
> Q: And what is that opinion?
>
> A: Her disclosure, her physical exam findings and all her other symptoms, are consistent with a child who has experienced child sexual abuse.

Trial counsel did not object to Dr. Frazier's testimony.

However, on cross-examination, trial counsel elicited testimony from Dr. Frazier that there was no physical evidence of abuse and that her opinion was based upon Victim's disclosure:

9

Q [by trial counsel]: But there is absolutely no findings whatsoever, or any evidence physically, that any sexual abuse happened, isn't that correct?

A [by Dr. Frazier]: That is correct, but as I previously stated, looking at lots and lots of children, we expect a child who has been physically assaulted, to have a normal exam, as well. So, the fact that she has a normal exam, does not refute her disclosure of child sexual abuse.

Q: Okay. So, basically isn't that, you're just saying that since she said that, then, then you believe her?

A: The most important consideration is her disclosure. She was also exhibiting other symptoms of trauma, as well.

Q: Like what?

A: The decline in her grades, her trouble sleeping.

Q: Now, there's a lot of other things that could cause someone to have lower grades and trouble sleeping, isn't that correct?

A: That is correct.

Q: So, isn't that just speculation?

A: It's consistent with her disclosure, especially given the time frame that she reported those happened.

. . . .

Q: And you basically said you can't conclude that she was not sexually assaulted?

A: Correct.

Q: Are you saying you can conclude that she was?

A: Based upon her disclosure, my conclusion would be it's consistent with child sexual abuse.

Q: Okay, based upon what she's saying?

A: Correct.

10

Hays alleged in his amended postconviction relief motion that Dr. Frazier testified that Victim "had been sexually molested to a reasonable degree of medical certainty."[2] He contended that Dr. Frazier's conclusion impermissibly bolstered and vouched for Victim's testimony. He speculated that had trial counsel objected, the result of the trial would have been different.

At the postconviction evidentiary hearing, trial counsel was examined about his failure to object to Dr. Frazier's testimony that Victim had been sexually assaulted. He stated that he raised a claim in his motion for new trial that the trial court erred in allowing Dr. Frazier's testimony because "at least in hindsight when I was doing my motion," "it seemed like an issue that shouldn't have been allowed at trial."[3] When trial counsel was asked why he didn't object to

---

[2] As the motion court observed, Hays mischaracterizes Dr. Frazier's opinion. Dr. Frazier did not offer particularized testimony that Victim had been sexually abused to a reasonable degree of medical certainty. Dr. Frazier's opinion was that Victim's disclosure, physical exam, and all other symptoms "were consistent with a child who has experienced child sexual abuse." As the motion court noted, when Hays raised this issue in his direct appeal, this court determined that Dr. Frazier's testimony was problematic not because it was particularized testimony but because Dr. Frazier did not rely on information independent of that contained in Victim's disclosure. *State v. Hays*, WD73942, mem. at 10-11 (Mo. App. W.D. Feb. 5, 2013).

[3] In Hays's direct appeal, he raised a plain error challenge to the admission of Dr. Frazier's testimony. The State contended that Hays made a strategic decision not to object to Dr. Frazier's testimony. This court stated:

> After reviewing the record, we conclude that defense counsel's failure to object was not due to inadvertence or negligence. Appellant's counsel made the following comments during the hearing on Appellant's motion for new trial:
>
>> I couldn't find a case on this part in Missouri that goes, that would actually prevent the doctor from testifying. I think, as far as I could tell what the law in Missouri is, that unless the doctor comes out and specifically says something to the effect of, I believe she's telling the truth or something like that, it kinda comes in.
>>
>> And I've talked to [Appellant] about all that, and, you know, I've been on the other side prosecuting these cases, and I've presented the cases the same way that [the prosecutor] did. And as far as I can tell, that is the law in Missouri.
>
> These comments establish that Appellant's defense counsel researched the admissibility of expert testimony and that he was familiar with trying child sex-abuse cases. The hearing transcript, therefore, indicates that Appellant's defense counsel was aware of the issues regarding the admissibility of expert testimony in sexual abuse cases prior to and during trial. It is evident that defense counsel recognized the distinction in Missouri law between generalized and particularized comments, and no doubt appreciated that there can be a fine line between the two. Thus, it appears that counsel considered the law regarding such testimony based on his own experience as well as his legal research. Where counsel made a conscious decision as to whether or not to

11

this testimony at trial, he said "there would've been no particular reason. I guess it just would've been oversight." He could not recall any trial strategy for not objecting. However, during cross-examination, trial counsel was asked:

> Q [by the State]: And in this case, while the case was being tried, do you recall Dr. Fraz[i]er's testimony about the other signs that the, or the other observations she had made concerning this victim? In other words, the difficulty in urinating, the lack of sleep, grades, and things of that nature.
>
> A [by trial counsel]: I, I recall that she went into some details on some things. I don't remember all of the details.
>
> Q: And, so, if you believed that Dr. Fraz[i]er's testimony was admissible because of the other items that she listed, would you have objected to that testimony?
>
> A: If I believed it was admissible, no.

In rejecting Hays's claim, the motion court determined that Dr. Frazier's testimony was limited to her opinion that Victim "exhibited symptoms consistent with her reported sexual abuse"; she did not offer particularized testimony that Victim had been sexually abused to a reasonable degree of medical certainty.

"In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized." *State v. Ray*, 407 S.W.3d 162, 171 (Mo. App. E.D. 2013) (citing *State v. Churchill*, 98 S.W.3d 536, 539 (Mo. banc 2003)); *see also State v. D.W.N.*, 290 S.W.3d 814, 817 (Mo. App. W.D. 2009). "General testimony describes a 'generalization' of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse." *Ray*, 407 S.W.3d at 171. "Particularized testimony is testimony concerning a specific victim's credibility as to whether she has been abused." *Id.*

---

object, it cannot be said that defense counsel's failure to object was due to inadvertence or negligence, and plain error review is, therefore, unavailable.

*Id.* at 15 (footnote omitted).

Particularized testimony must be rejected when offered "because it usurps the decision-making function of the trier of fact and, therefore, is inadmissible." *Id.*

Here, the State presented Dr. Frazier's testimony in "generalized" form describing characteristics commonly observed in abused children rather than particularized testimony. Furthermore, Dr. Frazier neither stated that Hays is guilty of the crime nor commented on Victim's credibility. *Id. See State v. Fewell*, 198 S.W.3d 691, 697-98 (Mo. App. S.D. 2006) (holding there was no impermissible comment on victim's credibility where the expert witness "answered affirmatively when asked, 'But, it's your opinion that [Victim] was sexually abused as she reported to you, right?'") (emphasis omitted); *State v. Wadlow*, 370 S.W.3d 315, 322 (Mo. App. S.D. 2012) (concluding that trial court did not plainly err in admitting expert witness's testimony where the expert never testified that defendant was guilty of offense charged but merely that it was her opinion that victim had been sexually abused, and testimony did not vouch for victim's credibility). Frankly, the criticism as to the admissibility of Dr. Frazier's testimony relates to Dr. Frazier basing her opinion almost entirely on what Victim reported to her instead of independent corroborating evidence. Yet, as Hays's trial counsel demonstrated in cross-examination of Dr. Frazier, this was a trial theme that trial counsel wanted to exploit—that is the unreliable and "moving target" memory of Victim as both an "eyewitness" and an expert opinion "source." As this court noted in *D.W.N.*, trial counsel may sometimes *want* to interject otherwise objectionable evidence into a case if it can assist defense counsel in supporting the defense theme of the case. *D.W.N.*, 290 S.W.3d at 824-25.

Based on trial counsel's comments made during the hearing on the motion for new trial, he was aware of the distinction between generalized and particularized expert testimony. His decision not to object to Dr. Frazier's testimony and instead to aggressively attack the basis for

13

Dr. Frazier's opinion testimony during cross-examination does not constitute ineffective assistance.

Points I and II are denied.

### Forensic Interviewer Jackman

In Hays's third point on appeal, he asserts that trial counsel was ineffective for failing to object to Jackman's testimony recounting Victim's statements during a forensic interview. He acknowledges that trial counsel's trial strategy not to object to Jackman's testimony was based on his desire to elicit prior inconsistent statements made by Victim to Jackman. Hays complains that this trial strategy allowed Jackman also to recount Victim's prior consistent statements and that another trial strategy could have accomplished the same goal and avoided prejudice.

In Hays's Rule 29.15 motion, he alleged that trial counsel was ineffective for failing to object to Jackman's testimony as to what Victim had reported to her. At the postconviction hearing, trial counsel was asked whether he had any reason for not objecting to Jackman testifying as to what Victim told her:

> A [by trial counsel]: . . . Part of my strategy in this trial was the fact that it appeared to me that this alleged victim had given different versions of what had happened, one of which was to Ms. Jackman.
>
> And, thinking back on it, I, I think I didn't object to her because one of the versions she gave to Ms. Jackman was different from some of the other stuff I had in, and I was trying to highlight those differences to cut into her credibility, the alleged victim's credibility.

The motion court rejected Hays's claim on the ground that trial counsel's approach of not objecting to testimony in order to highlight inconsistencies among Victim's multiple statements was reasonable trial strategy. We agree.

Parties are entitled to impeach a witness by introducing prior inconsistent statements. § 491.074, RSMo 2000. Here, the record shows that trial counsel's actions were designed to

14

impeach Victim's testimony with prior inconsistent statements, a particular trial strategy. *Griffith v. State*, 233 S.W.3d 774, 778 (Mo. App. E.D. 2007). "Reasonable trial strategy decisions cannot form the basis of an ineffective assistance of counsel claim." *Id.*

Point III is denied.

### Closing Argument (Points VI, VII, VIII, IX, and X)

Hays asserts that trial counsel was ineffective for failing to object to five statements during the State's closing argument. "A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). "To prevail on a claim that counsel was ineffective for failure to object at closing argument, a movant must prove that the failure to object was not a matter of trial strategy and that the failure to object was prejudicial." *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014). An attorney's failure to object during closing arguments is prejudicial if it deprives the accused of a fair trial. *Id.*

"Generally, failure to object during closing argument is not error, but rather a function of trial strategy." *Id.* (internal quotation omitted). "In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Id.* (internal quotation omitted). Furthermore, "[c]ounsel will not be deemed ineffective for failing to make nonmeritorious objections." *Id.* (internal quotation omitted).

"Moreover, because the jury is instructed that the lawyers' arguments are not evidence, prejudice is unlikely to result from the failure to object to statements made in closing argument." *Id.* Here, prior to closing argument, the jury was instructed that closing arguments "are intended to help you in understanding the evidence and applying the law, but they are not evidence." We

15

assume that a jury will follow the instructions of the trial court. *Dorsey v. State*, 448 S.W.3d 276, 289 (Mo. banc 2014).

## Beyond-Reasonable-Doubt Argument

In Hays's sixth point on appeal, he asserts his trial counsel was ineffective for failing to object when the prosecutor argued facts outside the evidence: that Dr. Frazier had found, "beyond a reasonable doubt," that Victim had been sexually assaulted.

At trial, Dr. Frazier testified that "to a reasonable degree of medical certainty," Victim's "disclosure, her physical exam findings and all her other symptoms, are consistent with a child who has experienced sexual abuse." During closing, the prosecutor argued that "the doctor found, *beyond a reasonable doubt*, that the child had been sexually assaulted. She didn't say the defendant did it. The doctor said, this child is a victim of sexual assault."

In Hays's amended Rule 29.15 motion, he asserted that trial counsel was ineffective for failing to object to the prosecutor's comment because the prosecutor misquoted Dr. Frazier and conflated her testimony with the standard of proof to be applied by the jury.

The motion court rejected Hays's claim, finding that, at worst, the prosecutor mistakenly used the term "beyond a reasonable doubt" when he intended to use the term "to a reasonable degree of medical certainty"; the comment was not repeated by the State; and even if the fleeting comment was objectionable, Hays was not prejudiced because it was not determinative of the outcome of the trial. The motion court further found that an objection would have been "strategically questionable and would likely have led to the State clarifying the statement and repeating the argument, all to [Hays's] detriment." We agree.

We conclude that Hays was not prejudiced by his trial counsel's failure to object to the prosecutor's brief misstatement. "A mere failure to object to objectionable evidence or argument

16

does not establish ineffective assistance of counsel." *Galindo v. State*, 30 S.W.3d 900, 904 (Mo. App. S.D. 2000) (internal quotation omitted). "Rather, [t]he failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *Id.* at 904-05 (internal quotation omitted).

"First, the misstatement was brief and not repeated." *Id.* at 905 (citing *State v. McRoberts*, 837 S.W.2d 15, 23 (Mo. App. E.D. 1992) (singular brief misstatement of evidence in closing argument did not substantially deprive defendant of right to a fair trial)). "Second, the trial court had instructed the jury immediately prior to the closing arguments that the arguments were not evidence." *Id.* (citing *McRoberts*, 837 S.W.2d at 23). Third, any prejudice caused by the misstatement was further mitigated when Hays's trial counsel attacked Dr. Frazier's testimony in closing argument by arguing that the doctor found no physical evidence of sexual abuse and that she based her conclusion on information from Victim. Fourth, the prosecutor used the terms "reasonable doubt" and "reasonable degree of medical certainty" correctly in rebuttal argument. We do not discern how Hays's trial counsel's failure to object to the prosecutor's brief misstatement affected the outcome of the trial.

Point VI is denied.

**Trial-Counsel-Is-Not-A-Doctor Argument**

In Hays's seventh point, he asserts his trial counsel was ineffective for failing to object when the prosecutor argued facts outside the evidence: that trial counsel was not a doctor.

In rebuttal, the prosecutor argued:

> And, and amazingly, I, I, you know, I, I guess it's not in evidence, but I personally know that Mr. Gray [Hays's trial counsel] is not a medical doctor or psychiatrist or psychologist, and yet he wants you to believe that Dr. Frazier just told you a blatant lie.

. . . .

> Mr. Gray, Dr. Gray, tells you that there has to be something, contrary to what the doctor said, this doctor with, you know, probably, I don't know, 10 years of training, seen hundreds of kids, disregard her testimony and listen to Dr. Gray.
>
> Well, I know, I, I, you know, I understand the compulsion when you represent a person, that you want to put the best foot forward, but we don't, you don't base your judg[]ment here upon what may've been said by Dr. Gray. It's not evidence. What is evidence is Dr. Frazier.

At the postconviction evidentiary hearing, when trial counsel was asked if he had any strategic reason for not objecting to this argument, he responded that he had no strategic reason, but he knew "the parties tend to have quite a bit of leeway in closing arguments." Clearly, Hays's trial counsel's understanding of the "leeway in closing arguments" is a fair characterization of the law. Here, the context of the complained-of statements by the prosecutor were comments of the character of "tongue in cheek." This was a sarcastic argument akin to stating that which is common sense: "lawyers are experts on the law, not medicine." It was a response to Hays's trial counsel's personal opinions in closing argument marginalizing the opinion of Dr. Frazier. In rebuttal, the prosecutor was arguing the opposite: that the jury must examine the evidence presented at trial and to not be swayed by trial counsel's "lay opinion" closing argument. "Comments directed at the tactics of defense counsel are permissible." *Tisius v. State*, 183 S.W.3d 207, 218 (Mo. banc 2006). And, again, the jury had just been instructed by the trial court that the arguments of counsel were *not* evidence. Thus, while the better practice for closing argument by counsel is that even one's sarcasm should be confined to the evidence presented in the case, we conclude that the prosecutor's argument, in this instance, did not rise to the level of depriving Hays of a right to a fair trial.

Thus, the motion court did not clearly err in denying this claim and Point VII is denied.

**Use-Of-A-Racial-Epithet-On-The-First-Day Argument**

In Hays's eighth point, he asserts his trial counsel was ineffective for failing to object when the prosecutor argued facts outside the evidence:  that Hays used a racial epithet the first day he saw Victim.

At trial, Victim testified that she and Hays had an argument at school; when Hays saw her walking with a mixed-race boy, Hays yelled at her that she was not going to be seen with a n****r.  On cross-examination, Victim admitted that she did not like Hays telling her who she could and couldn't be with and that it was right after this argument that she made the allegations against him.

However, Hays also testified that when he first came back to Marshall, Missouri, in October 2009, he and Victim had had conversations in which they did not agree about his "issues with other races" that developed while he was in prison.  On cross-examination, Hays confirmed that he told Victim he did not want her to see an African-American, both when he first arrived back in Marshall and again when the boyfriend incident occurred:

> Q [by trial counsel]:   Now, you, you said that you told [Victim] you didn't want her to see a black boy?
>
> A [Hays]:       I did.
>
> Q:       And, and those weren't the terms you used, were they?
>
> A:       No, they weren't.
>
> Q:       But you told her that you didn't want her seeing a n[****]r?
>
> A:       That's what I said.
>
> Q:       And you told her that the first day that you came there?
>
> A:       No, this was the—
>
> Q:       Well, you told it—

19

A:      —this was the argument.

Q:      Well, I understand that was the argument, sir, but you told her, at least what you told this jury today was that when you first got there, you told her that—

A:      Yeah.

Q:      —you didn't like, and I don't know if you said n[****]rs or if you said—

A:      No, I did not at that time, no.

Q:      —African[-]American men, or I don't know what term you used, but you certainly told her that you didn't like that?

A:      I did.

During closing argument, the prosecutor argued that Hays's defense apparently was that Victim had a plan to accuse Hays of sexual abuse because he used a racial epithet the first day they saw each other:

> And, so, I guess what the defense here is, that, that this child was tired of the defendant because for the first time, I mean, he came in, I guess he said, in the first day that he saw her, he came in and said, you know, I don't like n[****]rs and I don't want my daughter dating n[****]rs.

In Hays's amended Rule 29.15 motion, he alleged that trial counsel was ineffective for failing to object to the prosecutor's argument that on the first day Hays saw Victim, he told her she was not to date n****rs. He contends that the State's closing argument misstated the evidence and needlessly focused attention on Hays's use of a racial epithet.

The motion court rejected Hays's claim, finding that the State's argument was supported by the testimony and by reasonable inferences contained in the record. The motion court noted that trial counsel offered Hays's disagreement with Victim over her walking with a mixed-race student at school as the reason for Victim to make false accusations against Hays. Trial counsel's reliance on the argument as the cause for Victim's accusations justified the State's

20

further inquiry about Hays's concerns. Hays testified that he expressed his views about "other" people to Victim on the first day he moved in. The motion court determined that Hays, therefore, cannot fault the State for arguing that the issue existed from the very first day. We agree.

According to the record, when Hays came home, he and Victim did not agree about his "issues with other races" that developed while he was in prison. "The prosecutor can argue the evidence, the reasonable inferences from that evidence, and the credibility of the witnesses." *Glass v. State*, 227 S.W.3d 463, 474 (Mo. banc 2007). "Counsel will not be deemed ineffective for failing to make nonmeritorious objections." *Barton*, 432 S.W.3d at 754 (internal quotation omitted). The motion court correctly found that this was a proper commentary on the evidence.

Point VIII is denied.

### Every-Defense-Lawyer's-Dream Argument

In Hays's ninth point on appeal, he asserts that the motion court erred in denying his Rule 29.15 motion relating to his argument of error relating to the prosecutor's "defense lawyer's dream" comment in closing argument.

At trial, the prosecutor argued in rebuttal: "You know, it's, it's every defense lawyer's dream, because the physical act of violating this child scrambles her up so bad, and the fact that she's been kicked to the curb by her family, she has nobody out there upon which to, to rely and in whom to confide."

In Hays's amended Rule 29.15 motion, he alleged that trial counsel was ineffective for failing to object to this argument because there was no evidence "that defense lawyers love rape cases where the complaining witness is messed up and has been kicked out of her home by her

21

family and is all alone." He contends that this comment moved the focus of the trial from Victim's inconsistent statements to what terrible people defense attorneys are. We disagree.

Hays's argument is based "upon the presumption that the prosecutor's statement was a personal attack on defense counsel." *State v. Steele*, 314 S.W.3d 845, 852 (Mo. App. W.D. 2010). "If the argument is found to have been a personal attack, it is improper and objectionable." *Id.* However, if the argument is found to have been "an attack on the defense's technique or trial tactics, rather than counsel's integrity or character[,] the argument is permissible." *Id.* (internal quotation omitted). Prosecutorial comments are improper if they suggest defense counsel was lying or had committed a crime. *See id.* "Nothing in the statement suggests that defense counsel was acting in an unethical, illegal[,] or disingenuous way." *Id.* The prosecutor's criticism in this case was that Hays was arguing both that he was not the perpetrator and that Victim's stories were inconsistent. The prosecutor was responding in rebuttal to trial counsel's argument questioning Victim's credibility and was suggesting that Hays's arguments were not persuasive. "Nothing in this criticism suggests that the personal integrity of [Hays's] defense counsel is in question. This criticism of the defense's trial theory does not even approach the boundary of what Missouri courts have deemed impermissible in closing arguments." *Id.*

Point IX is denied.

### Failure-to-Call-a-Witness-Who-Does-Not-Exist Argument

In Hays's tenth point, he asserts that the motion court erred in denying his Rule 29.15 motion because trial counsel was ineffective for failing to object to the prosecutor's improper argument of an adverse inference based on Hays's failure to call a witness.

In closing, the prosecutor argued that although Hays contended he did not sexually abuse Victim, Dr. Frazier testified that based upon her training, experience, observation of Victim, and interviews of Victim and her family, Victim had been sexually assaulted. The prosecutor continued:

> Now, to disbelieve that somehow, of course, number one, the defendant has no burden, but one would think that, you know, in a case like this, this, if it's so obvious it didn't happen, that you get, you know, another person with that kind of training in here and say, well, you know, Dr. Frazier is wrong. But there's nobody saying Dr. Frazier is wrong. What counsel told you in his opening statement was that there's no damage to this child.

"'The State may refer to a defendant's failure to offer evidence, so long as there is no reference to the defendant's failure to testify.'" *Lebbing v. State*, 242 S.W.3d 761, 767 (Mo. App. S.D. 2008) (quoting *State v. Phillips*, 940 S.W.2d 512, 519 (Mo. banc 1997)). "'Prosecutors are entitled to argue matters supported by the evidence or matters reasonably inferable from the record, and may point out to the jury an absence of evidence to support a theory suggested by the defendant.'" *Id.* (quoting *State v. Chaney*, 967 S.W.2d 47, 56 (Mo. banc 1998)). Hays's defense was that the alleged sexual abuse did not take place. The State's argument that there was no evidence presented to the jury by anyone other than Hays that Victim was not abused was clearly "'pointing out to the jury an absence of evidence to support a theory suggested by the defendant.'" *Id.* (quoting *State v. Mease*, 842 S.W.2d 98, 110 (Mo. banc 1992)). "As such, the State's closing argument did not improperly shift the burden of proof to [Hays]." *Id.* Furthermore, trial counsel cannot be found to be ineffective for failing to make non-meritorious objections. *Id.* The motion court did not err in failing to find trial counsel ineffective for failing to object to this argument.

Point X is denied.

23

**Conclusion**

The judgment of the motion court is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and James Edward Welsh, Judges, concur.